1
2
3
4
5
6
7
8
9

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

10

JAMES ALLEN SIMONTON,

11
Petitioner,

12
vs.

13
M. EVANS, Warden,

14
Respondent.

Civil No.       07-0431 J (LSP)

**REPORT AND RECOMMENDATION
RE DENIAL OF PETITION FOR
WRIT OF HABEAS CORPUS**

15   I.     **INTRODUCTION**

16        James Allen Simonton, a state prisoner proceeding pro se, has filed a Petition for Writ of

17   Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging his San Diego Superior Court

18   conviction in case number SCD160194 for committing six counts of lewd acts upon a child and

19   two counts of annoying or molesting a child.

20        The Court has considered the Petition and Exhibits, Respondent's Answer, Petitioner's

21   Traverse and all the supporting documents submitted by the parties.  Based upon the documents,

22   and for the reasons set forth below, the Court recommends that the Petition be **DENIED**.

23   II.    **FACTUAL BACKGROUND**

24        The following statement of facts is taken from the California Court of Appeal opinion,

25   *People v. Simonton*, No. D039632, slip op. (Cal. Ct. App. June 10, 2003).  This Court gives

26   deference to state court findings of fact and presumes them to be correct; Petitioner may rebut

27   the presumption of correctness, but only by clear and convincing evidence.   28 U.S.C.A.

28   § 2254(e)(1); *see also Parke v. Raley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical

07cv0431

fact, including inferences properly drawn from such facts, are entitled to statutory presumption of correctness).  The facts as found by the state appellate court are as follows:

Lee Ann F., mother of 10-year-old Michael and 15-year-old David, met Simonton through her husband to be, Brett F.  Simonton and Brett had been friends for over 25 years.  By spring 2000, Simonton visited Lee Ann's home every day.  He took the family to amusement parks and bought the children expensive presents, including a Sega video game set for Michael and an expensive drum kit and motorcycle for David.  He also helped the family financially, in part by giving Lee Ann money for a down payment on a car, buying a used truck for her 17-year-old son Brian, and buying beds for David and Brian.

Simonton often wrestled with Brian, Michael and David.  David testified that twice while they were wrestling, Simonton grabbed David's buttocks, which made David feel uncomfortable.  David pushed Simonton off and told him, "That's not cool" or "Don't, I don't like it."  After the second incident, they no longer wrestled.  David thought the actions were accidental and told a detective Simonton had not molested him because he did not believe Simonton's actions constituted molestation.  Brian testified that two or three times he heard David tell Simonton, "Do not touch my butt."

Michael testified that Simonton also wrestled with him. When Simonton won, he would tickle Michael on his upper thigh.  While they were wrestling, Simonton also touched Michael's buttocks under his clothes.

Michael slept at Simonton's house one night during his mother's honeymoon, which occurred on May 2 through May 6, 2000.  Because there were adults playing the organ downstairs, Michael asked if he could sleep upstairs in Simonton's bed.  When Simonton came into the bed to watch television, Michael asked him to rub his face with a Q-tip.  Simonton then massaged Michael's feet.  Michael sat on top of Simonton and rubbed his shoulders and legs.

While Michael sat on Simonton, Simonton put his hands inside Michael's shorts, and rubbed Michael's buttocks and touched his testicles.  Michael said, "You're getting to my private."  Simonton said, "No, that's not it."  But after Michael said it was, Simonton removed his hands from Michael's pants.  Simonton then told Michael about rubbing his penis on his boyfriend's buttocks, giving a "blow job" to a boy he babysat, and masturbating.

These stories made Michael feel "horny," so he laid on Simonton and pushed his penis up and down on Simonton's chest.  Simonton said, "Ah," and then pushed Michael's body down so that their penises were touching; Simonton's penis was hard.  In order to move his penis away, Michael moved up and hugged Simonton.

Michael slept with Simonton that night.  The next morning, Simonton asked Michael if he had a flap on the tip of his penis.  Michael did not know what he meant.  Simonton grabbed Michael's pants and tried to look. Michael closed his pants tightly and punched and slapped Simonton so that Simonton could not touch his penis.

///

///

-2-

A few weeks later, Michael told Lee Ann that Simonton touched him on his lower back, which Lee Ann interpreted as meaning that Simonton had touched Michael's buttocks. She called a family meeting that included Michael, Brett, Michael's father and his wife, and Simonton. Simonton said he had done nothing wrong and had not ever done anything like this in the past. After Brett vouched for Simonton's character, Lee Ann continued to allow Simonton to be with the children. Lee Ann knew Simonton was a registered sex offender, but she thought it was due to an affair Simonton had had with a 17-year-old boy when Simonton was 20 years old.

In February or March 2001, Michael's teacher, Jennifer Ruffer, noticed that Michael's behavior had changed. He was sad, cried a few times, became upset more easily, and was more distractible. She sent him to see Stephanie Svoboda, a counselor at Michael's school. Svoboda met with Michael on March 1, 2001 and again on April 30, 2001. During the second meeting, Michael told Svoboda that when he had spent the night at Simonton's house, Simonton put his hand on Michael's buttocks and moved them towards his penis. Michael also said that Simonton had moved Michael on top of him. Michael cried while telling the story. As a result of this conversation, Svoboda made a report to Child Protective Services.

In May 2001, police officers took Michael and his sister Jennifer to the Polinski Center, where Michael stayed for three days. Michael was then released to his father. He was not allowed to return to his mother's home for two to three months.

Spencer L., Billy D., and Jonathan A. testified about Simonton's prior acts of molestation. Spencer testified that in early 1988 when he was about 12, Simonton, who was a family friend, pinned him down so that he couldn't move and fondled his penis. When Spencer told him to stop, Simonton said, "What are you going to do about it?" Spencer said he would tell his parents. Simonton then said that no one would believe him because he was a little boy. Spencer was frightened. Simonton pinned down Spencer and fondled him about 10 times.

Billy testified that in March 1988, when he was 11 years old, Simonton pinned him down on a bed in Spencer's house, pulled down his pants and played with his penis. Billy, who had tried to get away, did not tell anyone what had happened because he was ashamed and afraid.

Spencer and Billy each testified that in March 1988, after building and painting a clubhouse with Simonton, they went into Spencer's garage. Simonton unzipped Billy's pants and urged Spencer to spray paint Billy's penis. Then Spencer spray painted his own penis. The group then went into Spencer's house, where Simonton discussed the different sizes of penises and showed the boys his penis. Because they were afraid, Spencer and Billy went into Spencer's bedroom and locked the door. Simonton pounded on the door and screamed at the boys. After Simonton pushed his way into the room, he pinned Spencer down and fondled his penis. Billy unsuccessfully tried to pull Simonton off Spencer. Sometime later, Simonton again pinned down Billy. At that point, Billy told his mother, who reported it to the police.

Jonathan testified that in February 1990, when he was 10 years old, he spent the night with his friend Christopher F. When Jonathan awoke the next morning, Simonton was laying in bed next to Christopher, moving his hand under the blanket near Christopher's groin. Christopher appeared to be asleep. Jonathan fell asleep again, but when he awoke, Simonton was lying next to him. Simonton

07cv0431

began to stroke Jonathan's penis and asked if that felt good. Jonathan said, "No." Simonton continued to stroke Jonathan's penis for 30 to 45 seconds and asked again if it felt good. When Jonathan again said, "no," Simonton stopped. A few days later, Jonathan told his mother what Simonton had done to Christopher, but did not tell anyone what Simonton had done to him until he was contacted by a district attorney investigator shortly before trial.

Simonton testified on his own behalf. He admitted that the testimony of Spencer, Billy and Jonathan was true. He pled guilty to one count each for Spencer and Billy and was sentenced to work furlough and counseling. He was sent to prison in 1990 after violating probation by being with the minors Jonathan and Christopher, was released on parole in 1993, and was discharged in 1996.

Simonton spent a lot of time with Lee Ann's children, especially after Lee Ann and Brett separated. He told Brian and David, whom he "kind of adopted," that he was a sex offender. Brian became angry with Simonton when Simonton took away his truck due to Brian's relationship with a 20-year-old woman. Simonton wrestled with David many times. His hand touched David's buttocks to push him up and off, but the touching did not annoy, upset or anger David, who would laugh and say, "Don't touch me."

Simonton spent most of his time with Brian and David because Michael and his sister Jennifer usually stayed at their father's house. Michael visited Simonton's house twice with his brothers and sisters. One night, Michael slept in the den with Jennifer. On another occasion, Michael and Simonton watched television in Simonton's room. Simonton rubbed Michael's face with a Q-tip and scratched Michael's back. He asked Michael to rub his shoulders and gave Michael a hug. Simonton testified Michael could not have been at Simonton's house on Thursday May 4, because Simonton had choir practice.

In 1993, Simonton told Brett he had molested two little boys. Simonton denied telling Brett or Lee Ann that an affair with a 17-year-old boy led to his prison sentence.

Robert Plimpton, Simonton's roommate, testified that Michael was not at their home during the week of May 2 through May 6, 2000. Roy Attridge, who studied piano with Simonton, testified that he visited Simonton's home three or four times during 2000 and never saw young boys there. Sonny Borges testified he spent the night at Simonton's house sometime between April and August 2000. Brian and David spent the night downstairs.

In rebuttal, Brett testified that Simonton told him he was imprisoned for having a consensual relationship with a 17-year-old boy. Lee Ann testified that the only time Michael spent the night at Simonton's house was during her honeymoon in May 2000.

(Resp't Lodgment No. 6 at 2-7.)

## III. **PROCEDURAL BACKGROUND**

On June 14, 2001, the District Attorney for the County of San Diego filed an Information charging James Simonton with six counts of lewd act upon a child (Cal. Penal Code § 288(a)), one count of attempted lewd act upon a child (Cal. Penal Code §§ 288(a) and 664, and two

07cv0431

counts of annoying or molesting a child (Cal. Penal Code § 667.6(a).  It was further alleged that Simonton had previously been convicted of two serious felony priors (Cal. Penal Code §§ 667(a)-(i), 668 and 1192(c)) and had suffered  two prior strike convictions.  (Cal. Penal Code §§ 667(b)-(i), 1170.12 and 668.)  (Resp't Lodgment No. 1 at 1-5.)

On November 7, 2001, a jury found Simonton guilty of six counts of lewd act upon a child, and two counts of annoying or molesting a child.  Simonton was acquitted of Count five, attempted lewd act upon a child.  (*See id.* at 136-44.)  The court found true one serious felony prior conviction (Cal. Penal Code §§ 647.6(a), 1192.7(c)), and two prior strike convictions (Cal. Penal Code §§ 667(b)-(i), 1170.2, 668.)  The court struck the strikes and sentenced Simonton to 36 years to life in prison.[1]  (Respt's Lodgment No. 1 at 184-87.)

Simonton appealed to the California Court of Appeal, Fourth Appellate District, Division One.  (*See* Resp't Lodgment No. 3.)  On appeal, Simonton argued that (1) the trial court violated his right to due process by permitting the admission of two prior bad acts; (2) the trial court violated his constitutional right to a defense by allowing irrelevant expert testimony; (3) evidence was insufficient to support his convictions for annoying or molesting a child (counts eight and nine, in violation of his due process rights; and (4) the cumulative effect of the errors required reversal.  (*See generally*, Resp't Lodgment No. 3.)  On June 10, 2003, the appellate court affirmed Simonton's conviction in an unpublished decision.  (Resp't Lodgment No. 6.)

On July 14, 2003, Simonton filed a petition for review in the California Supreme Court.  (Resp't Lodgment No. 7.)  The court denied the petition without comment on August 13, 2003.  (Resp't Lodgment No. 8.)

On August 2, 2004, Simonton filed a petition for habeas corpus in the San Diego Superior Court, raising eleven claims.  (Resp't Lodgment No. 9.)  The court denied the petition in a reasoned decision on September 14, 2004. (Resp't Lodgment No. 10.)  On October 17, 2004, Simonton filed a petition for rehearing of the denial of his Superior Court habeas petition.

---

[1]  The court sentenced Simonton to six concurrent 25 years-to-life terms for the six counts of lewd acts upon a child, one consecutive six year term and one concurrent six year term for the two counts of annoying and molesting a child, and a five year consecutive term for the prison prior.  (Resp't Lodgment No. 1 at 184-187.)

07cv0431

(Resp't Lodgment Nos. 12, 13.)   The petition was denied on December 1, 2004. (Resp't Lodgment No. 14.)  On December 27, 2004, Simonton  filed a petition for writ of mandate with the California Court of Appeal, raising the same arguments presented in his petition for rehearing.  (Resp't Lodgment No. 14.)  The petition was denied without comment on February 9, 2005.  (Resp't Lodgment No. 16.)

On March 7, 2005, Simonton filed a petition for habeas corpus with the California Court of Appeal.  (Resp't Lodgment No. 17.)  In his petition, Simonton raised ten claims: (1) his right to due process was violated because newly discovered evidence showed that the victim had given false testimony; (2) the trial court improperly instructed the jury; (3) the trial court admitted improper expert testimony; (4) the court of appeal improperly assigned sexual intent to the conduct in order to affirm the convictions under California Penal Code section 647.6(a); (5) the prosecutor committed misconduct throughout the trial, depriving him of his right to a fair trial; (6) the trial court improperly admitted evidence of prior bad acts; (7) trial counsel was ineffective; (8) appellate counsel was ineffective; (9) counts six and seven and counts eight and nine, were mulitplicitous; and (10) the trial judge was biased.  (*See* Resp't Lodgment No. 17.)

On June 23, 2005, Respondent filed an informal response to the petition.  (Resp't Lodgment No. 18.)  Petitioner filed a reply on July 19, 2005.  (Resp't Lodgment No. 19.)  On July 20, 2005, the Court of Appeal issued an Order to Show Cause.  (Resp't Lodgment No. 20.)  Respondent filed a Return on September 29, 2005.  (Resp't Lodgment No. 21.)  Petitioner filed a Traverse on December 16, 2005.  (Resp't Lodgment No. 22.)  On December 16, the Court of Appeal ordered an evidentiary hearing.  (Resp't Lodgment No. 23.)  Specifically, the appellate court ordered the superior court to make findings of fact regarding Simonton's judicial bias claim.  (*Id.*)

The evidentiary hearing was held on May 16 and 17, 2006.  (*See* Resp't Lodgment No. 24.)  The referee issued a report of the proceedings on May 30, 2005.  (Resp't Lodgment No. 25.)  On October 4, 2005, the California Court of Appeal denied Simonton's habeas petition in a reasoned decision.  (Resp't Lodgment No. 27.)

/ / /

07cv0431

On November, 13, 2006, Simonton filed a petition for review in the California Supreme Court.  In the petition, Simonton raised the same basic claims as those contained in his petition before the court of appeal. However, in the petition for review, each claim raised a federal constitutional violation.  (*See* Resp't Lodgment No. 28 at i-ii.)  The California Supreme Court denied the petition without comment or citation on January 3, 2007.  (Resp't Lodgment No. 29.)

On March 8, 2007, Simonton filed the instant Petition for Writ of Habeas Corpus ("Petition") [doc. no. 1].  Respondent filed an Answer on July 6, 2007 [doc.no. 9]; and Simonton filed a Traverse on August 30, 2007 [doc. no.15].

## IV.    DISCUSSION

### A.    Scope of Review

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in <u>violation of the Constitution or laws or treaties of the United States.</u>

28 U.S.C.A. § 2254(a) (West 1994) (emphasis added).

The current petition is governed by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *See Lindh v. Murphy*, 521 U.S. 320 (1997).  As amended, 28 U.S.C. § 2254(d) reads:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was <u>adjudicated on the merits</u> in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254(d)(1)-(2) (West 2006) (emphasis added).

/ / /

To obtain federal habeas relief, Simonton must satisfy either § 2254(d)(1) or § 2254(d)(2). *See Williams v. Taylor*, 529 U.S. 362, 403 (2000).  The Supreme Court interprets § 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, 529 U.S. at 412-13; *see Lockyer v. Andrade*, 538 U.S. 63, 73-74 (2003).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision.  *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991).  If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law.  *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Lockyer*, 538 U.S. at 75-76); *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).  However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim.  *Early v. Packer*, 537 U.S. 3, 8 (2002).  "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" *id.*, the state court decision will not be "contrary to" clearly established federal law.  *Id.*

### B.   Analysis

Simonton raises eight grounds for relief: (1) his due process rights were violated when the trial court improperly instructed the jury; (2) his due process rights were violated by the admission of certain expert testimony; (3) his due process rights were violated because there was insufficient evidence to support convictions on counts 8 and 9; (4) his due process rights were violated because he was tried before a biased judge; (5) his due process rights were violated by the prosecutor's misconduct; (6) his Sixth Amendment right to effective assistance of counsel was violated by both trial and appellate counsel; (7) his due process rights were violated because his convictions for counts 6 and 7, and his convictions for counts 8 and 9, were multiplicitous;

1    and; (8) his due process rights were violated by the admission of evidence of uncharged acts and

2    the testimony of Christopher F.  (*See* Pet. at 6-18.)[2]

3        Respondent argues that Claims One, Three, Five, Seven and Eight are procedurally

4    barred.  (Answer at 10-18.)  Respondent also argues that each claim should be denied on the

5    merits because the state court's decision was neither contrary to, nor an unreasonable application

6    of, clearly established law, and did not involve an unreasonable determination of the facts. (*See*

7    Answer at 19-39.)

8            *1.    Procedural Default*

9        Respondent argues that Claims One, Five, Seven, and Eight are procedurally barred under

10   the contemporaneous objection rule and the *Dixon* rule.  (Answer at 14-18.)      Further,

11   Respondent  asserts that Claim Three is barred under the *Waltreus* rule.  (*Id*. at 11-14.)  In his

12   Traverse, Petitioner "admits Grounds One, Five and Seven are procedurally barred." (Traverse

13   at 13.)  However, Petitioner asserts that Grounds Three and Eight are not barred.  (*Id.*)

14       "The procedural default doctrine 'bar[s] federal habeas when a state court declines to

15   address a prisoner's federal claims because the prisoner has failed to meet a state procedural

16   requirement.'"  *Calderon v. United States District Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir.

17   1996) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).  The doctrine "'is a specific

18   application of the general adequate and independent state grounds doctrine.'"  *Bean*, 96 F.3d at

19   1129 (quoting *Wells v. Maass*, 28 F.3d 1005, 1008 (9th Cir. 1994)).  Under the adequate and

20   independent state grounds doctrine, federal courts "'will not review a question of federal law

21   decided by a state court if the decision of that court rests on a state law ground that is

22   independent of the federal question and adequate to support the judgment.'"  *Bean*, 96 F.3d at

23   1129 (quoting *Coleman*, 501 U.S. at 729); *see also Hill v. Roe*, 298 F.3d 796, 798 (9th Cir.

24   2002); *LaCrosse v. Kernan*, 244 F.3d 702, 704 (9th Cir. 2001); *Park v. California*, 202 F.3d

25   1146, 1151 (9th Cir. 2000).

26   / / /

27

28
_____

[2] Simonton's Petition is lengthy and not consecutively paginated.  Therefore, this Court will refer to the page numbers generated by the electronic-filing document stamp.

-9-

07cv0431

The Ninth Circuit has held that because procedural default is an affirmative defense, Respondent must first have "adequately pled the existence of an independent and adequate state procedural ground. . . ." *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003). Once the defense is placed at issue, the burden shifts to petitioner, who must then "assert[] specific factual allegations that demonstrate the inadequacy of the state procedure . . . ." *Id.* The "ultimate burden" of proving procedural default, however, belongs to the state. *Id.* If the state meets this burden, federal review of the claim is foreclosed unless the petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

The Ninth Circuit has explained that "'[f]or a state procedural rule to be "independent," the state law grounds for the decision must not be interwoven with federal law.'" *Bennett*, 322 F3d at 581 (9th Cir. 2003) (quoting *LaCrosse,* 244 F.3d at 704). "'A state law ground is so interwoven if "the state has made application of the procedural bar depend on an antecedent ruling on federal law [such as] the determination of whether federal constitutional error has been committed."'" *Bennett*, 322 F.3d at 581 (quoting *Park*, 202 F.3d at 1152 and *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985)).

For a state procedural rule to be adequate, "the state law ground for decision must be well-established and consistently applied." *Bennett*, 322 F.3d at 583 (citing *Poland v. Stewart*, 169 F.3d 573, 577 (9th Cir. 1999).) Other cases have held that the state procedural rule must be "clear . . . and well-established at the time of the petitioner's purported default." *Bean*, 96 F.3d at 1129 (quoting *Wells*, 28 F.3d at 1010); *see also Fields*, 125 F.3d at 760, 762 (quoting *Ford v. Georgia*, 498 U.S. 411 (1991) (stating that the state procedural rule must be firmly established, regularly followed and consistently applied to be adequate).

/ / /

/ / /

/ / /

/ / /

### (a)    Grounds One, Five and Seven

Respondent argues that Grounds One, Five and Seven are procedurally barred under California's contemporaneous objection rule and under *In re Dixon*, 41 Cal. 2d 756, 759 (1953).[3] Respondent has pleaded that both rules are independent and adequate state procedural grounds. (*See* Answer at 15.)  Specifically, Respondent cites cases in support of the proposition that the contemporaneous objection and *Dixon* bars are independent and adequate.  (*See id.*)  Thus, Respondent has satisfied his initial burden.  *See Bennett*, 322 F.3d at 586.  Simonton offers no "specific factual allegations that demonstrate the inadequacy" of the contemporaneous objection bar.  *Id.*  In fact, he concedes Grounds One, Five and Seven are barred in his traverse.  (Traverse at 13) (stating that "Petitioner admits that the claims raised in Grounds One, Five and Seven are procedurally barred").  Thus, Simonton has failed to meet his burden under *Bennett*.  322 F.3d at 586.

Moreover, Simonton offers nothing to suggest there was cause for the default and actual prejudice as a result of the alleged violation of federal law; nor has he attempted to demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.  *See Coleman*, 501 U.S. at 750.  Accordingly, the Grounds One, Five and Seven are **DISMISSED** as procedurally barred.  *See Bennett*, 322 F.3d at 586.

### (b)    Ground Eight: Contemporaneous Objection

Respondent argues Ground Eight, Simonton's claim that his due process rights were violated by allowing the admission of uncharged acts and the testimony of Christopher F., is procedurally barred under the contemporaneous objection rule.  Respondent points to the court of appeal's decision on direct appeal.  The court, in a reasoned opinion, denied the claim as waived because Petitioner failed to object. (Resp't Lodgment No. 6 at 8.)  Simonton raised the issue again in his petition for review to the California Supreme Court.  The petition was denied without comment.  (Resp't Lodgment No. 8.)

/ / /

---

[3]  The *Dixon* rule provides that "a convicted defendant desiring to bring claims in a state habeas petition, must, if possible, have pursued the claims on direct appeal from his conviction."  *Park v. California*, 202 F.3d 1146, 1151 (2000) (citing *Dixon*, 41 Cal. 2d 756 (1953)).

Next, Simonton raised the issue in a state petition for habeas corpus to the California Superior Court.  However, Simonton did not claim his federal due process rights were violated.  Rather, he argued only state law and that his Fifth Amendment rights were violated because the admission of prior bad act evidence "compelled" him to testify against his will.  (*See* Resp't Lodgment No. 9 at Claim 6.)  Simonton made the same argument in his petition for habeas corpus to the California Court of Appeal.  (*See* Resp't Lodgment No. 17 at Claim 6.)  Finally, Simonton argued that his federal due process right were violated by the admission of prior bad act evidence in his petition for review of the denial of his petition in the California Supreme Court.  (Resp't Lodgment No. 28.)  The court denied the petition without comment or citation.  (*See* Resp't Lodgment No. 29.)  Accordingly, the last reasoned decision to specifically address this claim was the California Court of Appeal's decision on direct appeal and it is to that decision this Court must direct its analysis.  *Ylst*, 501 U.S. at 801-06.  In denying the claim, the court stated:

> Simonton contends the court deprived him of his federal constitutional right to due process and a fair trial by admitting evidence of prior bad acts under [California Evididence Code] section 1108 because the prior bad acts lacked probative value and had no effect other than to inflame and confuse the jury.  At trial, Simonton objected to the admission of prior act evidence on the bases that the evidence violated section 1108 and section 352; Simonton did not argue that the evidence violated his federal constitutional rights to due process and fair trial.  Having failed to raise these constitutional contentions below, Simonton has waived them.  (*People v. Raley* (1992) 2 Cal.4th 970, 892; *People v. Benson* (1990) 52 Cal.3d 754, 786 fn. 7.)

(Resp't Lodgment No. 6 at 8.)

Here, the court of appeal held that Petitioner had waived his claim by failing to object at trial, thus applying the contemporaneous objection bar.  (Resp't Lodgment No. 27 at 20-21.)  Respondent argues that the contemporaneous objection rule is independent and adequate under Ninth Circuit authority.  (Answer at 15.)  This Court agrees.

The Ninth Circuit has held that the contemporaneous objection rule is applied independent of federal law.  *See Vansickel v. White*, 166 F.3d 953, 957-58 (9th Cir. 1999) (recognizing and applying California's contemporaneous objection rule in affirming denial of a federal petition on the ground of procedural default); *Bonin v. Calderon*, 59 F.3d 815, 842-43 (9th Cir. 1995) (sustaining the state court's finding of procedural default where defendant failed

to make any objection at trial).  This Court further finds that the contemporaneous objection rule is also "adequate."  California courts have consistently applied the contemporaneous objection rule.  *Melendez v. Pliler*, 288 F.3d 1120, 1125 (9th Cir. 2002) (stating that "[w]e held more than twenty years ago that the rule is consistently applied when a party has failed to make any objection to the admission of evidence") (citing *Garrison v. McCarthy*, 653 F.2d 374, 377 (9th Cir. 1981); *see also Vansickel v. White*, 166 F.3d at 957-58; *Bonin v. Calderon*, 59 F.3d at 842-43).

Simonton has failed to present "specific factual allegations that demonstrate the inadequacy" of the contemporaneous objection bar.  *Id.*  Thus, he has failed to meet his burden.  *See Bennett*, 322 F.3d at 586.  Furthermore, Petitioner has made no attempt to demonstrate cause and prejudice or that a miscarriage of justice will result should the Court not consider the claim.  In his Traverse, he merely states:  "Petitioner denies that Ground[] . . . Eight [is] procedurally defaulted. [This] claim[] w[as] considered on direct appeal and implicate substantial due process violations. These violations [were] fairly presented to the California Supreme Court." (Traverse at 13-14.)  These assertions are insufficient to show cause and prejudice, or a miscarriage of justice.  *See Coleman*, 501 U.S. at 750.  While it is true that Petitioner's claim was presented to the California Supreme Court in both his petition for review on direct appeal and his petition for review of the denial of his petition for habeas corpus, the denials were without comment.  Thus, as discussed above, this Court must look through to the last reasoned decision to address that claim.  *See Ylst*, 501 U.S. at 801-06.  In that decision the claim was barred for failure to make a contemporaneous objection.  Accordingly, the Court **DISMISSES** Ground Eight of the Petition as procedurally barred.[4]

### (c)    Ground Three: Waltreus

Respondent argues that Ground Three is procedurally barred under *In re Waltreus*, 62 Cal. 2d 218 (1965).  In *Waltreus*, the California Supreme Court stated that "habeas corpus ordinarily cannot serve as a second appeal." 62 Cal. 2d at 225 (citing *In re Winchester*, 53 Cal.

---

[4]  Having concluded that Ground Eight is procedurally barred under the contemporaneous objection rule, this Court need not consider Respondent's argument that Ground Eight is also barred under *In re Dixon*, 41 Cal. 4th 750 (1953).

07cv0431

2d 528, 532 (1960)).  Since that decision, a *Waltreus* citation has become shorthand for the rule that "'any issue that was actually raised and rejected on appeal cannot be renewed in a petition for a writ

of habeas corpus.'"  *Forrest v. Vasquez*, 75 F.3d 562, 563 (9th Cir. 1996) (quoting *In re Harris*, 5 Cal. 4th 813, 829 (1993)).

Respondent first argues that a *Waltreus* citation is an independent and adequate state procedural bar.  This argument ignores Ninth Circuit authority which has specifically found that the *Waltreus* rule is not sufficient to bar federal relief.  *See Hill*, 298 F.3d 796 (stating "[t]he California Supreme Court's reliance on *In re Waltreus* does not . . . bar federal court review."); *LaCrosse*, 244 F.3d at 705,  n.11 (stating that an "[i]nvocation of the Waltreus rule by a state court . . . does not bar federal review."); *Bean*, 96 F.3d at 1131; *Forrest*, 75 F.3d at 564 (citing *Ylst*, 501 U.S. at 805) ("a *Waltreus* denial on state habeas has no bearing on [a habeas petitioner's] ability to raise a claim in federal court.").  Second, Respondent argues that under *Bennett*, "Petitioner must now plead inconsistencies or inadequacies with the application of [the *Waltreus* rule, or his claim will be procedurally defaulted."  (Answer at 13.)  This assertion misconstrues *Bennett*.  *Bennett* first requires the state to "adequately ple[a]d the existence of an independent and adequate state procedural ground as an affirmative defense" before the burden shifts to the petitioner to show "specific factual allegations that demonstrate the inadequacy of the state procedure."  *Bennett*, 322 F.3d at 586.  Since *Waltreus* is not an independent and adequate state procedural ground, Respondent has not met his initial burden.  *Id.*

Respondent argues that "older authority indicating *Waltreus* is not a procedural bar has been superceded by a change in California appellate procedure."  (Answer at 13) (citing *Maxwell v. Sumner*, 673 F.2d 1031, 1034-35 (9th Cir. 1982).

Respondent first asserts that *Maxwell* and *Ylst v. Nunnemaker*, 501 U.S. 797 (1991), are no longer controlling because of a change in procedure in the California Supreme Court.  The new procedure requires petitions for review rather than petitions for hearing.  Respondent explains that a petition for hearing "fairly presented every direct-appeal claim to the California Supreme Court. . ."  (Answer at 13.)  In contrast, Respondent states that a petition for review, " requires litigants to identify every issue they wish the California Supreme Court to consider."

1   (*Id.*)  Respondent also argues that the court in *Forrest* "misread *Ylst*" and that the same mistake

2   was repeated in *Hill v. Roe*, 321 F.3d 787, 789 (9th Cir.2003) (holding that the California's

3   citation to *Waltreus* did not bar federal court review).   Although this may be so, this procedural

4   shift does not render *Maxwell* or *Ylst* non-controlling authority.  These decisions have not been

5   overruled, and neither the Supreme Court nor the Ninth Circuit has issued a published a decision

6   that alters the precedential value of these cases.

7        Accordingly, because *Waltreus* is not an independent and adequate state procedural

8   ground, Respondent has not met his initial burden.  *Bennett*, 322 F.3d. at 586; *see also Hill*, 298

9   F.3d at 798.  Claim Three is therefore not procedurally defaulted.  Respondent's request that

10  Claim Three be dismissed as procedurally barred from federal review is **DENIED.**

11              **(d)      Conclusion**

12       For the reasons discussed above, this Court finds that Ground One, Five, Seven and Eight

13  are procedurally barred from federal habeas review and are therefore **DISMISSED**.  Ground

14  Three, however, is not barred from review and thus this Court will address the merits of the

15  claim below along with the remainder of Petitioner's claims.

16              **2.    *Merits***

17              **(a)      Ground Two: Expert Testimony**

18       In Ground Two, Petitioner argues that his due process rights were violated when the trial

19  court improperly permitted certain expert testimony**.**   Specifically, Simonton asserts his

20  constitutional rights were violated when the court allowed an expert to testify as to "grooming"

21  techniques used by child molesters.  (Pet. at 7.)

22       The last reasoned decision to discuss this claim was the California Court of Appeal's

23  opinion on direct review.  In denying the claim, the court stated:

24          Simonton next contends Levenberg's testimony should not have been
         admitted because it concerned a subject within common knowledge and it was
25       inadmissible profile testimony.  We review the admission of expert testimony for
         abuse of discretion. (*People v. Harvey* (1991) 233, Cal.App.3d 1206, 1227-1228.)
26       Expert opinion testimony is admissible when it "will assist the jury to understand
         the evidence or a concept beyond common experience . . . [and] is not admissible
27       if it consists of inferences and conclusions which can be drawn as easily and
         intelligently by the trier of fact as by the witness." (*People v. Torres* (1995) 33
28       Cal.App.4th 37, 45.)

          Police officers sometimes give expert testimony to explain that what

appears to be a common phenomenon has an [sic] different meaning in a criminal subculture.   For example, a police officer properly gave expert testimony explaining what gang members mean when they use certain common words, such as the word "cousin." (*People v. Champion* (1995) 9 Cal.4th 879, 919, 924-925, fn. 13.)   Similarly, Levenberg gave expert testimony that a pedophile has a different intention when giving gifts than an ordinary person and uses those gifts to gain a child's trust.   Further, "the subject of child molestation . . . is knowledge sufficiently beyond common experience such that the opinion of an expert would be of assistance to the trier of fact." (*People v. Dunnahoo* (1984) 152 Cal.App.3d 561, 577.)   The typical juror, who is not well versed in child molestation in general would not know about grooming.

We also reject Simonton's contention that Levenberg's brief discussion of grooming was inadmissible profile testimony.   "'Profile evidence is a "point by point examination of profile characteristics" that enable[s] the investigator to justify pursuing the matter.'" (*People v. Lopez* (1994) 21 Cal.App.4th 1551, 1555-1556.)   For example, a drug courier profile is an "informal compilation of characteristics" or an "abstract of characteristics" typically found in people who traffic in drugs. (*People v. Martinez* (1992) 10 Cal.App.4th 1001, 1006 fn. 2 citation omitted.)   An example of inadmissible profile evidence is a police officer's statement that the typical heroin dealer in Northern San Diego County is usually an Hispanic man. (*People v. Castenada* (1997) 55 Cal.App.4th 1067, 1071-1072.)   Profile testimony is inadmissible because "every defendant has the right to be tried based on evidence tying him to the specific crime charged, and not on general facts accumulated by law enforcement regarding a particular profile." (*Id.* at p. 1072.)

Levenberg's brief testimony about grooming behavior was not an informal compilation of characteristics of pedophiles.   It gave no characteristics of pedophiles, such as ethnicity or appearance.   It merely explained how pedophiles give gifts to make their victims feel special and gain their trust.

We reject Simonton's contention that the admission of Levenberg's testimony violated his constitutional right to present a meaningful defense.   The cases Simonton cites hold that prosecutorial interference with a defendant's right to present witness violates the right to present a meaningful defense. (*Crane v. Kentucky* (1986) 476 U.S. 683; *Rock v. Arkansas* (1987) 483 U.S. 44, 51, fn. 8; *In re Martin* (1987) 44 Cal.3d 1, 30; *People v. Mincey* (1992) 2 Cal.4th 408, 460.)   Simonton fails to explain how properly admitted testimony could violate that right.

(Resp't Lodgment No. 6 at 12-14.)

To the extent Simonton asserts a violation of California's evidentiary rules, his claim is not cognizable on a federal habeas proceeding unless the admission of the evidence violated his due process right to a fair trial. *Estelle v. McGuire*, 502 U.S. 62, 70 (1991); *Gordon. v. Duran*, 895 F.2d 610, 613 (9th Cir. 1990).   In order to establish a due process violation, Petitioner must show that the evidentiary ruling was so prejudicial that it rendered his trial fundamentally unfair. *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 897 (9th Cir. 1996); *Jammal v. Van de Kamp*, 926 F.2d

-16-

918, 919 (9th Cir. 1991).

Levenberg testified that in his experience as a police officer working on child abuse cases, "grooming" usually consisted of the abuser giving the child gifts or money, taking them places, and acting as almost a surrogate parent in order to make the child feel special and build a bond with the child. Ultimately, the abuser would build trust so that he could more easily abuse the child with less likelihood that the child would say anything. (Resp't Lodgment No. 2 at 277-78.)

Simonton has not shown that Levenberg's brief testimony regarding "grooming" was so prejudicial as to render his trial fundamentally unfair. His testimony on the subject of grooming went to explain the general modus operandi of child molesters. The Ninth Circuit has held that experts may "testify as to the general practices of criminals to establish the defendants' modus operandi." *United States v. Freeman*, 498 F.3d 893, 906 (9th Cir. 2007). Courts in other Circuits have specifically held that expert testimony regarding the typical modus operandi of child molesters is admissible. *See United States v. Romero*, 189 F.3d 576, 585 (7th Cir. 1999) (allowing expert testimony regarding the "modus operandi of modern child molesters"); *see also United States v. Hayward*, 359 F.3d 631, 636-37 (3d Cir. 2004) (allowing expert testimony regarding the general patterns of behavior exhibited by child molesters); *see also United States v. Hitt*, 473 F.3d 146, 158 (5th Cir. 2006) (holding that the admission of expert testimony regarding typical behavior of child molesters, including "grooming," was not an abuse of discretion).

The state court's admission of the testimony was not a violation of due process. *See Estelle*, 502 U.S. at 70. Thus, the state appellate court's denial of the claim was neither contrary to, nor an unreasonable application of clearly established law, and his claim is **DENIED.** *See Williams*, 529 U.S. at 412-13; 28 U.S.C. § 2254.

### (b)    Ground Three: Insufficient Evidence

Simonton claims there was insufficient evidence to support his conviction under counts eight and nine for annoying or molesting a child under California Penal Code section 647.6(a). Simonton raised this claim in the Court of Appeal on direct review and it was denied in a reasoned opinion. (Resp't Lodgment No. 6.) Petitioner raised the claim again in his petition for

1   review to the California Supreme Court and it was denied without comment or citation.  (Resp't

2

3    Lodgment No. 8.)  Thus, this Court must look through to the opinion of the court of appeal.

4   *Ylst*, 501 U.S. at 801-06; *Williams*, 529 U.S. at 412-13.

5         In denying the claim, the court stated:

6             Simonton contends substantial evidence does not support his conviction of
        two counts of annoying or molesting a child under Penal Code section 647.6
7       because touching a person's buttocks while wrestling is not behavior that would
        be annoying to a reasonable person. "In assessing a claim of insufficiency of
8       evidence, [we review] . . . the whole record in the light most favorable to the
        judgment to determine whether it discloses substantial evidence - that is, evidence
9       that is reasonable, credible, and of solid value - such that a reasonable trier of fact
        could find the defendant guilty beyond a reasonable doubt." (*People v. Rodriguez*
10      (1999) 20 Cal.4th 1, 11, 82 Cal.Rptr.2d 413, 971 P.2d 618.)

11            Penal Code section 647.6 makes it a felony to "annoy[] or molest [] a child
        under the age of 18" if the defendant has sustained a prior felony conviction for
12      child molestation. (Pen.Code, § 647.6, subds.(a), (c).)  In order to convict a
        defendant of violating Penal Code section 647.6, the prosecution must prove "(1)
13      conduct a "'normal person would unhesitatingly be irritated by'" [citations] and
        (2) conduct "'motivated by an unnatural or abnormal sexual interest in the
14      victim'" [citations]." (*People v. Lopez* (1998) 19 Cal.4th 282, 289, 79 Cal.Rptr.2d
        195, 965 P.2d 713; *see also* CALJIC No. 16.440.)
15
              The terms "'annoy' and 'molest' . . . are synonymous and generally refer
16      to conduct designed to disturb, irritate, offend, injure, or at least tend to injure,
        another person." (*Lopez*, supra, 19 Cal.4th at p. 289, 79 Cal.Rptr.2d 195, 965 P.2d
17      713.) As used in this context, "'[a]nnoy' and 'molest' ordinarily relate to offenses
        against children, with a connotation of abnormal sexual motivation.  The
18      forbidden annoyance or molestation is not concerned with the child's state of
        mind, but rather refers to the defendant's objectionable acts that constitute the
19      offense. [¶] Accordingly, to determine whether the defendant's conduct would
        unhesitatingly irritate or disturb a normal person, we employ an objective test not
20      dependent on whether the child was in fact irritated or disturbed." (*Id*. at p. 290,
        79 Cal.Rptr.2d 195, 965 P.2d 713.)
21
              Simonton contends that the evidence in this case shows no more than that
22      he innocently touched David's buttocks while they were wrestling. He relies upon
        *People v. Carskaddom* (1957) 49 Cal.2d 423, 318 P.2d 4, where the court
23      concluded there was no substantial evidence of criminal activity when a defendant
        took a little girl to sit under a large tree in a public park, bought the girl an ice
24      cream bar, and then walked away from the park with the girl. (*Id*. at pp. 424-425,
        318 P.2d 4.) Unlike the defendant in *Carskaddom*, Simonton touched David.  The
25      buttocks are a place of sexual stimulation; the type and context of the touch
        determines whether it is innocent or sexual.  David's expressed concern about
26      Simonton's touches provides substantial evidence that Simonton touched David's
        buttocks in a sexual way and not in the way normally found in wrestling.  A
27      normal person would find these sexual touches of the buttocks annoying.

28   (Resp't Lodgment No. 6 at 14-16.)

          In a sufficiency of the evidence claim, clearly established law requires the court determine

whether "any rational trier of fact could have found the essential elements of the crime beyond

a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *Mikes v. Borg*, 947 F.2d 353, 356 (9th Cir. 1991).  In making this determination, the Court is not "to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 318-19.  Rather, this Court must view the evidence in the light most favorable to the prosecution, and must presume the trier of fact resolved conflicting evidence in favor of the prosecution. *Jackson*, 443 U.S. at 319, 326; *Taylor v. Stainer*, 31 F.3d 907, 908-09 (9th Cir. 1994).  Under *Jackson*, this court must look to the state criminal law in determining whether a factfinder could have found the petitioner guilty beyond a reasonable doubt.  443 U.S. at 324.

California Penal Code section 647.6 requires proof that:

> (1) A person engaged in [acts] [or] [conduct] directed to a child under the aged of 18 years which would unhesitatingly disturb or irritate a normal person if directed at that person; and

> (2) The [acts] [or] [conduct] [were] [was] motivated by an unnatural or abnormal sexual interest in the alleged child victim.

> [It is not necessary that the acts[s] [or] [conduct] actually disturb or irritate the child or that the body of the child actually be touched.]

California Jury Instructions - Criminal ("CALJIC") No. 16.440 (brackets in original); *see also* Resp't Lodgment No. 1 at 122.

Viewing the evidence in the light most favorable to the verdict, a reasonable juror could have found Simonton guilty of violating section 647.6 beyond a reasonable doubt.  As the state court noted, David testified that while wrestling, Simonton "grabbed" his butt two times. (Resp't Lodgment No. 2 at 231-32.)  David stated that the first time it happened he pushed Simonton off him and told him "that's not cool." (*Id.* at 232.)  He testified that he did not like Simonton doing that. (*Id.*)  When Simonton did it again, David pushed him off and told him "[d]on't, I don't like that." (*Id.* at 233.)  This testimony is sufficient for a reasonable juror to find that Simonton's conduct, grabbing David's butt, would "unhesitatingly disturb or irritate" a normal person. *See* Cal. Penal Code § 647.6.  Furthermore, given Simonton's admissions that he previously had molested other young men, a reasonable juror could infer that Simonton's conduct with David was an attempt to satisfy an "abnormal interest" in David.  (Resp't Lodgment No. 2 at 454-56.)

1  / / /

2

3  Thus, there was sufficient evidence to convict Simonton on counts eight and nine.  *See Jackson*,

4  443 U.S. at 319.

5  The state court's denial of the claim was neither contrary to, nor an unreasonable

6  application of clearly established law.  *See Williams*, 529 U.S. at 412-13; 28 U.S.C. § 2254.

7  Simonton is therefore not entitled to relief as to this claim.

8  **(c)  Ground Four: Judicial Bias**

9  In his next claim, Simonton argues his due process rights were violated by judicial bias.

10  Specifically, he asserts that the trial judge held a bias against child molesters, which he expressed

11  to Petitioner's mother before, and after, the trial.  (Pet. at 9.)  Simonton raised this claim in a

12  petition for habeas corpus to the California Supreme Court and it was denied without comment.

13  (Resp't Lodgment No. 29.)  Thus, this Court looks through to the last reasoned decision by the

14  state court, that of the California Court of Appeal, which denied Simonton's petition in a

15  reasoned decision after a two-day evidentiary hearing was held in superior court.  *See Ylst*, 501

16  U.S. at 801-06.

17  ***(1)  Factual Background***

18  As discussed above, the Court of Appeal ordered the San Diego Superior Court to hold

19  an evidentiary hearing regarding the claim of judicial bias.  The Court of Appeal directed the

20  trial court to answer two questions:

21  (1) At some time after Simonton had been convicted and sentenced did Judge
   Wellington make statements to Ms. Mireille Cauldren, Simonton's mother, that
22  he "is convinced that any defendant assigned to his court for trial on charges of
   sexual offenses against minors is guilt of the charged (or lesser included)
23  offenses?"

24  (2) If the answer to question (1) is yes, has Simonton demonstrated, considering
   the applicable presumptions, Judge Wellington's statements to Ms. Cauldren in
25  and the manner and circumstances under which they were made, and any other
   evidence presented by petitioner and respondent, that Judge Wellington in fact
26  holds an abiding conviction that any defendant who is assigned to his court for
   trial on charges of sexual offenses against minors is guilty of the charged (or lesser
27  included) offenses?

28  (*See* Resp't Lodgment No. 23.)

-20-

07cv0431

At the evidentiary hearing, Simonton's mother, Mireille Cauldren, testified that she had been a travel agent for several years and Judge Wellington was a client of hers. She stated that when Judge Wellington first contacted her, he looked "tired and distraught." He told her he needed get a away for a vacation after having presided a "horrific" child abuse case. (Resp't Lodgment No. 24 at 27.) She said that Judge Wellington told her that the defendants in the case had tortured a child to death and were "monsters." (*Id.*)

Some time later, Judge Wellington contacted Cauldren again to arrange a trip for him. Cauldren testified that he told her he was going to be presiding over another one of "those cases," which she understood to mean a child abuse or molestation case. (*Id.* at 61.) He said he wanted to get away so he could "bolster himself to kind of sit through it again." (*Id.*) At some point after arranging the trip for Judge Wellington, Cauldren learned that he would be the judge presiding over her son's trial. (*Id.* at 63.) She contacted her son's attorney to ask him whether there was a conflict of interest because the judge was a client of hers. She stated that she had no reason to believe Judge Wellington could not preside over her son's trial fairly.[5] (*Id.*)

Cauldren sat through most of her son's trial. After the verdict, Cauldren spoke to Judge Wellington briefly. He stated that "after the dust settled," he would like to speak to her. (*Id.* at 66.) The two met after sentencing, in June 2002. (*Id.* at 67.) Cauldren testified that during the meeting, Judge Wellington stated: "'I - - just feel by the time they get in front of me for something that, they're all guilty' or words to that effect." (*Id.* at 68.) She understood "they" to refer to "pedophiles or people accused of being a pedophile." (*Id.* at 69.)

Judge Wellington testified at the evidentiary hearing. He stated that he did meet with Cauldren after the sentencing. He said he the he had met Cauldren at a taco shop and discussed how she was doing. They discussed the sentencing, including the reasons why he sentenced Simonton the way he did. (*Id.* at 209-10.) When Cauldren began discussing the specifics of the

---

[5] Upon learning that Ms. Cauldren was Simonton's mother, Judge Wellington discussed the matter with both defense counsel and the district attorney. Judge Wellington stated that, after much thought, "there [was] no question in his mind that [his acquaintance with Cauldren] would affect his impartiality." (Resp't Lodgment No. 2 at 81-82.) Both attorneys and Simonton stipulated to a waiver of disqualification. (*Id.* at 82-84.) Simonton and counsel signed the waiver on October 29, 2001. (Resp't Lodgment No. 1 at 70-71.)

trial, Wellington tired to direct the conversation elsewhere because he did not want to discuss the facts of the case. (*Id.* at 210-11.) He also stated that Cauldren asked him to write a letter to the prison asking that Simonton be placed in a particular custody level. (*Id.*). Wellington declined to write the letter. Wellington emphatically denied making any statements regarding his feeling that he was "jaded" or that "if they've gotten to the point they're in my courtroom, they must be guilty" or anything of the sort. (*Id.* at 214-28.)

### *(2)   State Court Decisions*

Following the evidentiary hearing, the superior court made lengthy factual findings. In sum, the court concluded that Caldren's testimony was not credible due to a bias toward her son and several other factors. (Resp't Lodgment No. 25 at 9.) The court found "compelling circumstantial evidence" that Judge Wellington did not express any bias during his conversation with Caldren. (*Id.* at 10.) For instance, very soon after her conversation with Wellington, Cauldren wrote him a thank you note stating: "The extreme kindness you have shown me will never be forgotten . . . Your words were a comfort to me . . . I just can't thank you enough – it's hard to find the words to express my gratitude – no small act of kindness is ever small." (*Id.* at 11.) The court found that these statement were inconsistent with her testimony that she was "stunned" and "reeling" after her meeting with Wellington. (*Id.*)

Further, Cauldren maintained a journal. She did not record anything about her June conversation with Wellington. Cauldren also failed to contact her son's appellate attorney after the conversation with Wellington. The court found that there was no record of Wellington's alleged statements to Caldren until over two years after the meeting took place, when Caldron signed a declaration regarding the alleged incident. (*Id.* at 12.) In contrast, the court found Wellington's testimony credible for a number of reasons. (*See generally*, *id.* at 14-17.)

In sum, the superior court found the answer to the first question posed by the Court of Appeal to be "no." That is, it found that did Judge Wellington did *not* make statements to Caldren, that he was "convinced that any defendant assigned to his court for trial on charges of sexual offenses against minors is guilty of the charged (or lesser included) offenses." (*Id.* at 19.) Because the court found that "in light of the fact that the Court of Appeal directed the court to

-22-

answer [Question 2] if the answer to Question 1 was 'Yes,'" the court declined to provide further analysis.  (*Id.* at 18-19.)

Having reviewed the superior court's findings following the evidentiary hearing, the court of appeal denied the claim, stating:

> Our evaluation of Simonton's claim that judicial bias warrants reversal of the judgment requires us to determine whether Simonton asserts a claim of extrajudicial bias (for which per se reversal is the apparent remedy) or whether he instead claims Judge Wellington developed a bias against Simonton during trial accompanied by "prejudicial intervention by [the] trial judge [that] so fundamentally impair[ed] the fairness of a criminal trial as to violate the [d]ue [p]rocess [c]lause." ( *Daye v. Attorney General of State of N.Y.*, *supra*, 712 F.2d at p. 1570.)

> It appears Simonton's habeas corpus petition relies on extrajudicial bias of the non-pecuniary type addressed by such cases as *Berger v. U.S., supra*, 255 U.S. 22, *Catchpole v. Brannon, supra*, 36 Cal.App.4th 237, and *Adoption of Richardson, supra*, 251 Cal.App.2d 222, e.g., a judge who had a preexisting bias or prejudice against the class of persons to which the litigant belonged germane to the matters being litigated in the action.  However, the referee, after an evidentiary hearing, found Judge Wellington did not make statements to Cauldren suggesting he held a preexisting belief that all defendants assigned to his court on charges of sexual offenses against minors are guilty of the charged (or lesser related) offenses.  The referee's report extensively reviewed the evidence supporting the finding.  Although Simonton contends the finding is contrary to the evidence, our review of the report convinces us the finding is supported by the evidence. (*In re Scott* (2003) 29 Cal.4th 783, 812.)

> The referee's finding is fatal to Simonton's per se reversal claim because, after the alleged posttrial statements attributed to Judge Wellington by Cauldren are eliminated, there is no cognizable evidence to support the allegation that Judge Wellington harbored the kind of extrajudicial bias that would cause a reasonable person to entertain a reasonable doubt that he impartially conducted the trial.

> Simonton appears also to argue that reversal for judicial bias can be premised on the adverse evidentiary rulings made by Judge Wellington at Simonton's trial. To the extent Simonton intends to argue that a reviewing court may find a preexisting extrajudicial bias or prejudice warranting per se reversal because the trial court made unfavorable rulings at trial, the courts have determined that adverse rulings, even if incorrect, will not alone support per se reversal based on a claim of judicial bias. (*See, e.g., U.S. v. Gallagher* (1978) 576 F.2d 1028, 1039; *People v. Hefner, supra*, 127 Cal.App.3d at p. 95.)  Instead, a claim of judicial misconduct based on trial court activities, when unaccompanied by any evidence of a preexisting extrajudicial bias, requires a showing that the court's actions at trial were so egregious and pervasive that the conduct "transgress[ed] the limits of fundamental fairness" and thereby deprived the defendant of his or her right to a fair trial because it "distract[ed] the jury from a conscientious discharge of [its] responsibilities to find the facts, apply the law, and reach a fair verdict," and involved a trial whose conduct was such "that public confidence in the impartial administration of justice was seriously at risk." (*Daye v. Attorney General of State of N.Y., supra*, 712 F.2d at pp. 1571-1572.) However, because both the factual and legal bases for this species of a judicial bias claim

were available to Simonton in his original appeal, he may not utilize this habeas proceeding as a new appeal to resurrect this claim. (*See generally In re Harris* (1993) 5 Cal.4th 813, 825-834.)

/ / /

Simonton's habeas petition was necessarily predicated on a factual allegation of a preexisting extrajudicial bias by the trial judge against the class of defendants to which Simonton belonged. The referee's report and findings, for which there is substantial evidentiary support, has eradicated the factual basis for this assertion, and we therefore conclude Simonton may not obtain per se reversal for his claim of preexisting extrajudicial bias.

(Resp't Lodgment No. 27 at 16-18.)

### (3)    Analysis

It is clearly established that the Due Process Clause guarantees a criminal defendant the right to a fair and impartial judge. *In re Murchison*, 349 U.S. 133, 136 (1996). To succeed on a judicial bias claim, however, a petitioner must "overcome a presumption of honesty and integrity in those serving as adjudicators." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). "The inquiry must be not only whether there was actual bias on [the judge's] part, but also whether there was such a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindicating the interests of the court and the interests of the accused." *Taylor v. Hayes*, 418 U.S. 488, 501 (1974). A petitioner may show judicial bias in one of two ways, by demonstrating the judge's actual bias or by showing that the judge had an incentive to be biased sufficiently strong to overcome the presumption of judicial integrity (i.e., a substantial likelihood of bias). *Paradis v. Arave*, 20 F.3d 950, 958 (9th Cir. 1994); *Fero v. Kerby*, 39 F.3d 1462, 1478-79 (10th Cir. 1994).

In evaluating this claim, this Court must defer to the state court's factual findings unless they are rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Here, the state court, after holding a thorough evidentiary hearing and taking the testimony of several witnesses, found Judge Wellington's testimony credible and Cauldren's testimony tainted by bias. The court found that Judge Wellington did not make the statements to Cauldren suggesting that he had a pre-existing belief that all defendants assigned to his court on charges of sexual offenses against minors were guilty of the charged (or lesser related) offenses. (Resp't Lodgment No. 27

1   at 18.)

2        In his Petition, Simonton merely reiterates his mother's version of events, contends the

3   state court made "unreasonable findings of fact," and claims the state court overlooked evidence

4   supporting Cauldren's credibility.  (Pet. at 9.)   However, the state court did consider the

5   witnesses who testified to Cauldren's good character.   The court found that the testimony

6   regarding Cauldren's honesty in business dealings "had little relevance in this context, where

7   Ms. Cauldren had an undeniable bias and motive to help her son in seeking potential release

8   from prison." (Resp't Lodgment No. 25 at 14.)   Simonton has failed to rebut the state court's

9   factual findings by clear and convincing evidence.   *See* 28 U.S.C. § 2254(e)(1).

10       Because the state court concluded Judge Wellington did not have pre-existing bias against

11  Simonton or a particular class of defendants, Simonton has not "overcome a presumption of

12  honesty and integrity in those serving as adjudicators." *Withrow*, 421 U.S. at 47.  Petitioner has

13  not shown Judge Wellington was actually biased or that he had an incentive to be biased

14  sufficiently strong to overcome the presumption of judicial integrity.  *Paradis*, 20 F.3d at 958

15  *Fero*, 39 F.3d at 1478-79.   Nothing in the record indicates an appearance of bias against

16  Simonton.  Indeed, it is notable that Simonton was facing a maximum sentence of 280 years to

17  life.   The probation officer recommended the maximum sentence in her report.   (Resp't

18  Lodgment No. 1 at 158-61.) Nonetheless, the court denied the prosecutor's objection and struck

19  Simonton's two prior child molestation strike convictions.[6]  Ultimately sentencing Simonton to

20  36 years to life. (*See* Resp't Lodgment No. 1 at 184-187.)   All of the above supports the strong

21  presumption that Judge Wellington was unbiased and impartial.  *See Withrow*, 421 U.S. at 47.

22   The state court's denial of Simonton's judicial bias claim was neither contrary to, nor an

23  unreasonable application of, clearly established law.  *See Williams*, 529 U.S. at 412-13; 28

24  U.S.C. § 2254.  Simonton is therefore not entitled to relief as to this claim.

25  / / /

26

27

28
        [6]  Under California law, trial courts have discretion to strike a sentencing allegation, such as a
    strike allegation, "in the furtherance of justice."  *People v. Superior Court (Romero)*, 13 Cal.4th 497
    (1996).

1   ///

2   ///

3

4   **(d)    Ground Six: Ineffective Assistance of Counsel**

5   Simonton contends his attorney was ineffective in violation of his Sixth Amendment right

6   to counsel.  Specifically, Simonton argues his trial counsel (1) failed to object to prosecutorial

7   misconduct, (2) failed to object to improper jury instructions, (3) failed to object to the

8   "muliplicity counts," (4) improperly withdrew an alibi instruction, and (5) failed to present

9   witnesses in support of the theory of defense.  (Pet. at 14-16.)

10   The clearly established Supreme Court law regarding ineffective assistance of counsel

11   claims is *Strickland v. Washington*, 466 U.S. 668, 688 (1984).  *Strickland* requires a two-part

12   showing.  First, an attorney's representation must have fallen below an objective standard of

13   reasonableness.  *Id.* at 688.  Second, a defendant must have been prejudiced by counsel's errors.

14   *Id.* at 694.  Prejudice can be demonstrated by a showing that "there is a reasonable probability

15   that, but for counsel's unprofessional errors, the result of the proceeding would have been

16   different.  A reasonable probability is a probability sufficient to undermine confidence in the

17   outcome." *Id.*; *see also Fretwell v. Lockhart*, 506 U.S. 364, 372 (1993).

18   Further, *Strickland*  requires that "[j]udicial scrutiny of counsel's performance . . . be

19   highly deferential."  *Strickland*, 466 U.S. at 689.  There is a "strong presumption that counsel's

20   conduct falls within a wide range of reasonable professional assistance." *Id.* at 686-87.  The

21   Court need not address both the deficiency prong and the prejudice prong if the defendant fails

22   to make a sufficient showing of either one.  *Id.* at 697.

23   *(1)    Failure to Object to Prosecutorial Misconduct*

24   Simonton points to numerous instances of alleged prosecutorial misconduct.  He asserts

25   trial counsel was ineffective in failing to object to the misconduct.  Simonton's claims of

26   misconduct can be grouped into several categories: (1) misstatements of evidence; (2)  improper

27   vouching for the testimony of certain witness; (3) inflamation of jury passions; (4) misstatements

28   of law; (5) expressions of personal opinions and conclusions; and (6) improper questioning of

witnesses, including Petitioner.  (*See* Pet. at 10-13.)  Simonton contends the impact of the prosecutor's misconduct infected the trial with such unfairness as to violate his due process rights and thus his counsel's failure to object to the misconduct amounted to a violation of his Sixth Amendment right to counsel.  (*Id.*)  The last reasoned state court decision to address this claim is the California Court of Appeal's opinion denying Simonton's petition for habeas corpus. It is to that decision this Court must look.  *Ylst*, 501 U.S. at 801-06.

In denying this claim, the California Court of Appeal stated:

> Simonton asserts counsel should have interposed over 40 separate objections to the prosecutor's alleged misconduct in closing, because the prosecutor allegedly (1) misstated the evidence (15 times), (2) misstated the law (six times), (3) improperly vouched for witnesses (seven times), (4) appealed to passion and prejudice (eight times), and (5) drew "improper conclusions" (eight times).  Most of Simonton's cited instances were within the bounds of zealous advocacy and permissible argument, and his counsel may well have chosen not to risk offending the jury with repeated interruptions that drew nothing but overruled objections.  Even if a few of the cited instances may have resulted in successful objections, a mere failure to object to closing argument rarely establishes counsel's incompetence (*People v. Thomas* (1992) 2 Cal.4th 489, 531), particularly when arguable tactical reasons exist for not objecting. (*See People v. Ghent* (1987) 43 Cal.3d 739, 772 ["Counsel may well have tactically assumed that an objection or request for admonition would simply draw closer attention to the prosecutor's isolated comments."])  We have reviewed Simonton's remaining specifications of alleged incompetence for failure to object to the prosecutor's actions at trial, and are convinced there may have been valid tactical reasons for not objecting and, in any event, it is not reasonably probable Simonton would have been acquitted even had defense counsel objected.

(Resp't Lodgment No. 27 at 23-24.)

In analyzing Simonton's claim, the court of appeal applied the appropriate federal standard set forth in *Strickland* by citing *In re Jones*, 13 Cal.4th 552, 561 (1996) (citing *Strickland*, 466 U.S. at 687).  (Resp't Lodgment No. 27 at 21-22.)

### (i)   *Failure to Object to Misstatements of Fact During Closing*

Simonton claims the prosecutor made numerous misstatements of the fact during closing argument and that defense counsel's failure to object to any of them constituted ineffective assistance of counsel.  (Pet. at 10-11, 14.)  In evaluating whether Simonton's counsel's representation fell below an objective level of reasonableness, it is necessary to set forth the law regarding prosecutorial misconduct during closing argument.  It is clearly established that a prosecutor commits misconduct during closing argument when he or she manipulates or

misstates the evidence presented during the trial. *Darden v. Wainwright*, 477 U.S. 168, 181-82 (1986). However, a prosecutor may argue reasonable inferences based on the evidence. *See id.* at 181-82; *United States v. Molina*, 934 F.2d 1440, 1445 (9th Cir. 1991). "Counsel are given latitude in the presentation of their closing arguments, and courts must allow the prosecution to strike hard blows based on the evidence presented and all reasonable inferences therefrom." *Ceja v. Stewart*, 97 F.3d 1246, 1253-54 (9th Cir. 1996) (quoting *United States v. Baker*, 10 F.3d 1374, 1415 (9th Cir. 1993).)

The majority of Simonton's claims are baseless. First, Simonton claims that the prosecutor improperly argued that Petitioner called Michael a liar at a family meeting when no such testimony was given. (Pet. at 10.) In fact, Michael's father testified that he was present at the family meeting and Simonton, when confronted with Michael's accusations, denied them. (Resp't Lodgment No. 2 at 146-47.) Thus, the prosecutor did not misstate the evidence when he suggested that Petitioner called Michael a liar at the meeting. *See Darden*, 477 U.S. at 181-82. Second, Petitioner's accusation that the prosecutor misstated evidence when he stated during argument that Michael cried when talking to a therapist (Pet. at 10) is belied by the record. The prosecutor stated the Michael cried in front of his *teacher*. That statement is supported by the teacher's testimony. (Resp't Lodgment No. 2. at 344.) Next, Simonton's claim that the prosecutor misstated the evidence when he argued that Petitioner's testiomony corroborated Michael's is meritless. (Pet. at 10.) The district attorney stated that Simonton corroborated Michael's testimony that he rubbed Michael's face with a Q-tip. This was accurate. (*See* Resp't Lodgment No. 2 at 176, 519, 665.) Furthermore, Simonton complains that the prosecutor's statement that David said "it bothers me, it annoys me" was inaccurate. (Pet. at 10.) It was not. David testified that he told Simonton that "[he] didn't like it" when Simonton touched his buttocks while wrestling and that it was "not cool." (Resp't Lodgment No. 2 at 232-33.) The prosecutor was simply paraphrasing David's testimony, which is not improper. *See Ceja*, 97 F.3d at 1253-54. Further, contrary to Petitioner's assertions (Pet. at 10), the prosecutor was accurately summarizing trial testimony when he stated that Petitioner talked to Michael about masturbation. (*Id.* at 181, 521.) Thus, none of the Simonton's above claims of

1  prosecutorial misconduct are meritorious because there was no misstatement of fact by the

2  prosecutor.

3  ///

4

5      Simonton also claims there was no testimony to support the prosecutor's statement there

6  was "sex talk" between Petitioner and Jonathan.  However, Jonathan testified that while

7  Simonton was attempting to "ejaculate him," Simonton was asking him whether it "felt good."

8  (Resp't Lodgment No. 2 at 301.)  Given the context, this can be characterized as sex talk.  Thus,

9  there was not a misstatement of fact by the prosecutor and no reason for defense counsel to

10  object. *See Ceja*, 97 F.3d at 1253-54.  Next, Simonton asserts the prosecutor improperly argued

11  that Petitioner did not "come clean" about his past, despite the fact that Petitioner admitted to

12  all his prior offenses during his trial testimony.  (Pet. at 10.)  However, during argument, the

13  prosecutor was referring Simonton's failure to be completely honest with his friends and

14  Michael's family about his prior convictions.  (Resp't Lodgment No. 2 at 704.)  This is

15  supported by the record.  (*See id.* at 145-46, 593.)  In addition, Simonton's claims that the

16  prosecutor misstated the testimony of Robert Plimpton (Pet. at 11) are contradicted by the

17  record.  The prosecutor argued that Plimpton's testimony should be considered with caution

18  because he was a friend of Simonton and had not come forward with exculpatory evidence until

19  about three weeks before the trial.  (*Id.* at 705-06, 707-08.)  This was an accurate summary of

20  Plimpton's testimony.  (*Id.* at 424.)

21      In all of the above instances, defense counsel's failure to object was objectively

22  reasonable because there was no basis for objection.  The prosecutor did not misstate the

23  evidence. *See Ceja,* 97 F.3d at 1253-54.  Moreover, it was within counsel's reasonable tactical

24  decision-making role to determine that any objection would merely highlight damaging

25  testimony. *See Strickland*, 466 U.S. at 686-87.  Finally, Simonton has not shown prejudice

26  because any objections to the above arguments would have been overruled for the same reason.

27  *Id.* at 694.

28      Simonton also claims his counsel was ineffective in failing to object to the prosecutor's

statement that Petitioner asked Michael to sleep in his bed.  (Resp't Lodgment No. 2 at 650.)
Michael testified that he asked to sleep in Simonton's bed.  (*Id.* at 174.)   While it appears the
prosecutor's statement to the contrary was inaccurate, there was a reasonable, tactical reason for
counsel to elect not to object.  First, the trial court instructed the jury that "statements made by
the attorneys during the trial and closing argument are not evidence."  (Resp't Lodgment No. 1
at 84, 87, CALJIC Nos. 1.00 & 1.02.)  Courts presume that jurors follow the instructions given.
*See Francis v. Franklin*, 471 U.S. 307, 324 n. 9 (1985); *Hovey v. Ayers*, 458 F.3d 892, 913
(2006).  It was likely that an objection would have been overruled, that the jury would be
referred to the instruction stating that counsel's comments are not evidence and that any
objection would merely highlight unfavorable testimony.  *See Strickland*, 466 U.S. at 686-87.
Moreover, the statements in question were an extremely brief moment in a long trial.  Thus,
Simonton has failed to show there is "a reasonable probability" that, but for counsel's failure to
object, the result of the trial would have been different."  *Id.* at 694.

Simonton also claims the prosecutor misstated the evidence when he attempted to show
that Petitioner "assigned fault to Michael's parents for being angry about Simonton's alleged
past conduct."  (Pet. at 10.)   The Court has reviewed the portions of the record to which
Simonton points and finds no such suggestion.  Defense counsel did object to several of the
district attorney's questions about whether Simonton told Michael's mother about his past and
the trial court reminded the jury more than once that the prosecutor's questions or statements
were not evidence.  (*See* Resp't Lodgment No. 2 at 508-10, 527.)  Thus, Simonton has not shown
that counsel's performance was objectively unreasonable.  *Strickland*, 466 U.S. at 686-87.
Moreover, given the trial court's cautionary statements to the jury, Simonton has not shown a
reasonable probability that the outcome of the trial would have been different.  *See Hovey*, 458
F.3d at 913; *Strickland*, 466 U.S. 694.

Finally, Simonton claims the prosecutor misstated evidence when he argued that Mr.
Borges never stayed the night at Mr. Plimpton's house.  (Resp't Lodgment No. 2 at 709.)  In fact,
Plimpton testified that Borges had spent the night at his house on a few occasions, but always
slept on the sofa.  Plimpton testified that he had no knowledge of Borges ever sharing a bed with

Simonton at his house.  (*Id.* at 421.)  The prosecutor's statement could be construed as a misstatement but, when taken in context, it appears the prosecutor was pointing out that Plimpton had no knowledge of Borges and Simonton sleeping together in the bedroom at his house, which was contrary to Borges' testimony.  (*See id.* at 709.)  Even assuming it was a misstatement, it was a reasonable tactical decision not to object.  It would have highlighted the discrepancies between defense witness' testimony.  *See Strickland*, 466 U.S. at 686-87.  Petitioner has also failed to show that, had his attorney objected, the outcome of the trial would have been different.  *Id.* at 694.  As discussed above, the trial judge would likely have overruled the objection and advised the jury that argument was not evidence.  (*See* Resp't Lodgment No. 2 at 87.)  Moreover, the statement was brief and given the evidence against Simonton, it is improbable it would have impacted the jury's decision.  *See Strickland*, 466 U.S. at 694.

In sum, the vast majority of Simonton's claims regarding misstatements by the prosecutor are not supported by the record.  Therefore, any failure to object could not have been ineffective.  As for the few instances in which the prosecutor may have misspoke, Simonton has failed to show that his counsel's decision not to object was objectively unreasonable.  *Id.* at 686-87.  Furthermore, Simonton has not shown that he was prejudiced by any failure to object.  *Id.* at 694.  Accordingly, the state's denial of this claim was neither contrary to, nor an unreasonable application of clearly established law.  *See Williams*, 529 U.S. at 412-13; 28 U.S.C. § 2254.  Simonton is not entitled to relief as to this claim.

### (ii)    *Improper Vouching*

Simonton argues that he was denied effective assistance of counsel when his attorney failed to object to the prosecutor's improper vouching.  (Pet. at 11.)  As discussed above, a prosecutor commits misconduct when his or her comments "'so infect. . . the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Darden*, 477 U.S. at 181.  Misconduct also occurs when a prosecutor "vouches" for the credibility of a witness.  "'Vouching consists of placing the prestige of the government behind a witness through personal assurances of the witness's veracity, or suggesting that information not presented to the jury supports the witness's testimony.'"  *United States v. Weatherspoon*, 410 F.3d 1142, 1146 (9th

1  Cir. 2005) (quoting *United States v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir.1993); *see also*

2  *United States v. Roberts*, 618 F.2d 530, 533 (9th Cir. 1980) (citing *Lawn v. United States*, 355

3  U.S. 339, 359-60 n.15 (1958)).

4  / / /

5       Here, the prosecutor was arguing that Michael and David's testimony was credible, in

6  a case that turned largely on their credibility.  In so doing, he argued the boys had no motive to

7  lie.  Such an argument does not constitute vouching.  *See United States v. Nash*, 115 F.3d 1431,

8  14329 (9th Cir.1997).  Similarly, as for the prosecutor's comments regarding credibility of

9  Simonton and possible bias of defense witness Plimpton, the district attorney was simply

10  outlining his argument that the evidence showed they were not credible witnesses.  (*See* Resp't

11  Lodgment No. 2 at 394-96, 710-11.)  Because the prosecutor did not refer to evidence outside

12  the record or make any personal guarantees as to truthfulness, there was no error.  *See United*

13  *States v. Necoechea*, 986 F.2d 1273, 1279 (9th Cir.1993).  Moreover, the jury was specifically

14  instructed to that it may look to alleged instances of bias, prior convictions, the character of the

15  witness for honesty and truthfulness, and other factors in evaluating the credibility of witnesses.

16  (*See* Resp't Lodgment No. 1 at 96-97, CALJIC No. 2.20.)  The prosecutor was merely pointing

17  to evidence that went to the credibility of the witnesses.  This is not improper vouching.  *See*

18  *Weatherspoon*, 410 F.3d at 1146.

19       Accordingly, counsel's failure to object was not unreasonable because his objection

20  would have been overruled.  *Strickland*, 466 U.S. 686-87.  For the same reason, Simonton has

21  not shown a reasonable probability that the result would have been different had counsel

22  objected.  *Id.* at 694.  The state court's denial of this claim was neither contrary to, nor an

23  unreasonable application of, clearly established law.  *See Williams*, 529 U.S. at 412-13; 28

24  U.S.C. § 2254.  Simonton is not entitled to relief as to this claim.

25                          *(iii)*     <u>*Inflaming Jury Passions*</u>

26       Simonton also claims counsel was ineffective in failing to object to the prosecutor's

27  inflammatory comments made during closing argument.  Specifically, Petitioner complains that

28  the prosecutor referred to him as a "predator" and the victims as "prey" on several occasions.

1    (*See* Pet. at 11, *see also* Resp't Lodgment No. 2 at 640-41, 650, 658, 668, 696-97, 703, 712,

2    715.)

3    / / /

4    / / /

5          The Ninth Circuit has stated that "name calling is not an admirable style of argument and

6    we do not condone it, but this court has been reluctant to find it cause for reversal." *United*

7    *States v. Berry*, 627 U.S. 193, 200 (9th Cir. 1980) *citing  U. S. v. Taxe*, 540 F.2d 961 (9th Cir.

8    1976 (holding that calling defendant "scavenger" and "parasite" were based on evidence that

9    defendant was profiting at the expense of copyright owners and thus not a violation of due

10   process).  Most  of  the  comments  about  which  Simonton  complains  are  unflattering

11   characterizations, but they are supported by the evidence.  *See United States v. Malatesta*, 583

12   F.2d 748, 759 (5th Cir.1978); *see also Malicoat v. Mullin*, 426 F.3d 1241, 1256 (5th Cir. 2005)

13   (holding that prosecutor's comments, particularly calling defendant "evil" and a "monster" did

14   not undermine the fundamental fairness of the trial).  Evidence, when viewed in the light

15   favorable to the prosecution, showed that Simonton had set out to develop trust among the boys

16   and then used that trust to exploit them.  Thus, the prosecutor's references to Simonton as a

17   "predator" were supported by the evidence and did not render Petitioner's trial fundamentally

18   unfair. *See Taxe*, 540 F.2d at 967-68; *see also Donnelly*, 416 U.S. at 645.  Accordingly, defense

19   counsel's decision not to object to the comments was not objectively unreasonable. *Strickland*,

20   466 U.S. 686-87.  Furthermore, Simonton has not shown a reasonable probability that, but for

21   the prosecutor's isolated comments, the result of the trial would have been different. *Id.*  at 694.

22        The  state  court's  denial  of  this  claim  was  neither  contrary  to,  nor  an  unreasonable

23   application of clearly established law.  *See Williams*, 529 U.S. at 412-13; 28 U.S.C. § 2254.

24   Simonton is not entitled to relief as to this claim.

25                           *(iv)*     <u>*Misstatements of Law*</u>

26        Simonton argues he was denied effective assistance of counsel when his attorney failed

27   to object to the prosecutor's alleged misstatements of law during closing argument.  (*See* Pet. at

28   12.)   The Court has reviewed the portions of the record cited by Petitioner  and finds that the

prosecutor did not misstate the law.

Petitioner claims that the prosecutor improperly argued to the jury that California Evidence Code section 1108 "allowed for an inference of guilt" and that the prosecutor failed to refer to the proper standard of proof with regard to CALJIC No. 2.50.01, the jury instruction for section 1108. (Pet. at 12.) Petitioner misreads the record. First, the prosecutor argued that because Petitioner had admitted he had previously molested three boys, under section 1108, the jury could infer the defendant committed the crimes in this case. (Resp't Lodgment No. 2 at 648.)

CALJIC 2.50.01 states:

> Evidence has been introduced for the purpose of showing that the defendant engaged in a sexual offense [on one or more occasions] other than that charged in the case. . . .

> If you find by a preponderance of the evidence that the defendant committed a prior sexual offense, you may, but are not require to, infer that the defendant had a disposition to commit sexual offenses. *If you find that the defendant had this disposition, you may, but are not required to, infer that [he] [she] was likely to commit and did commit the crime [or crimes] of which [he] [she] is accused.*

> However, if you find by a preponderance of the evidence that the defendant committed [a] prior sexual offense[s], that is not sufficient by itself to prove beyond a reasonable doubt that [he] [she] committed the charged crime[s]. The weight and significance of the evidence, if any, are for you to decide.

CALJIC No. 2.50.01 (emphasis added) (brackets in original). The prosecutor's statement during closing argument is consistent with the instruction. Indeed, the prosecutor recited it almost verbatim.[7]  (*See* Resp't Lodgment No. 646-47.)

Simonton also argues that the prosecutor omitted the element of sexual motivation and

---

[7] The prosecutor stated:

> 2.50.01 tells you that, if you find the defendant committed a prior sexual offense, you may, but are not required, to infer that the defendant had a disposition to commit sexual offenses.

> If you find the defendant had this disposition, you may infer that he was likely to commit the crimes for which he is accused.

(Resp't Lodgment No. 2 at 646-47.)

07cv0431

interest from California Penal Code section 647.6 when explaining it to the jury.  He also claims that the prosecutor "urged the jurors to employ a subjective rather than objective test" when considering whether section 647.6 was violated.   (Pet. at 12.)  As discussed above, California Penal Code section 647.6 requires two elements be proved:

> (1) A person engaged in [acts] [or] [conduct] directed to a child under the aged of 18 years which would unhesitatingly disturb or irritate a normal person if directed at that person; and
>
> (2) The [acts] [or] [conduct] [were] [was] motivated by an unnatural or abnormal sexual interest in the alleged child victim.
>
> [It is not necessary that the acts] [or] [conduct] actually disturb or irritate the child or that the body of the child actually be touched.]

CALJIC No. 16.440 (brackets in original); *see also* Resp't Lodgment No. 1 at 122.

Again, Simonton misreads the record.  The prosecutor stated:  "As to the 647.6 crime, I think the real issue is whether or not defendant's grabbing David's bum is such an act that would irritate a normal child, a normal person and whether or not that act was done or motivated by and *abnormal or an unnatural* interest in children."  (Resp't Lodgment No. 2 at 646) (emphasis added).  Contrary to Simonton's claim, the prosecutor did argue that the test was an objective one when he stated that the question was whether the conduct would irritate a "normal child, a normal person," rather than the victim in the case.  This is an objective standard.  Furthermore, although the prosecutor did not specifically refer to abnormal or unnatural "sexual" interest, the rest of his statement taken in context, infers as much.  The prosecutor followed the above statement with an argument regarding Simonton's prior sexual offenses, indicating that Simonton's past offenses tended to show that he had an unnatural sexual motivation in the present cases.  (*Id.*)   Thus, the prosecutor's argument did not misstate the law.

Furthermore, the jury was instructed that "if anything concerning the law said by the attorneys in their arguments or at any other time during the trial conflicts with my instructions on the law, you must follow my instructions."  CALJIC No. 1.00, *see* Resp't Lodgment No. 1 at 84; *see also* CALJIC No. 1.02 (stating that statements made by attorney's during trial are not evidence and that jurors are not to make assumptions about any insinuations made during a

question because only the testimony is evidence).  It is presumed that the jury followed this instructions.  *See Francis*, 471 U.S. at 324 n. 9; *Hovey*, 458 F.3d at 913.  Any objection to a misstatement of law would likely been followed by the judge directing the jury to this instruction.  Accordingly, even if the prosecutor did make a slight misstatement of the law during argument, Simonton has not shown that his attorney's failure to object was objectively unreasonable. *Strickland*, 466 U.S. 686-87.  Furthermore, Simonton has not shown a reasonable probability that, but for the prosecutor's isolated comments, the result of the trial would have been different. *Id.* at 694

The state court's denial of this claim was neither contrary to, nor an unreasonable application of clearly established law.  *See Williams*, 529 U.S. at 412-13; 28 U.S.C. § 2254.  Simonton is not entitled to relief as to this claim.

*(v)*    <u>*Personal Opinions and Conclusions*</u>

Simonton claims he received ineffective assistance of counsel when his attorney failed to objected to the "personal opinions and conclusions" of the prosecutor during closing argument. (Pet. at 12.)  Here, it his helpful to reiterate that clearly established law provides that a prosecutor may argue reasonable inferences based on the evidence. *Darden*, 477 U.S. at 181-82; *Molina*, 934 F.2d at 1445.  "Counsel are given latitude in the presentation of their closing arguments, and courts must allow the prosecution to strike hard blows based on the evidence presented and all reasonable inferences therefrom." *Ceja*, 97 F.3d at 1253-54.  Moreover, statements made by attorneys during argument are not evidence.  *See* CALJIC No. 1.00.

In his Petition, Simonton argues that the prosecutor improperly inserted his own personal opinion in ten instances.  The majority of these instances are merely examples of the prosecutor making reasonable inferences based on the evidence presented at trial.  *See Ceja*, 97 F.3d at 1253-54.  In addition, Simonton takes the prosecutor's statements out of context.  For example, Simonton complains that the prosecutor stated that "there's not one speck of truth in defendant's testimony and that defendant lied to people."  (Pet. at 12.)  In fact, the prosecutor was much more specific.  He stated that "[t]here's not one speck of truth in what he told Lee Ann Fidler,

-36-                                    07cv0431

his best friend Brett Fidler, and what he told David." (Resp't Lodgment No. 2 at 666-67.) Thus, he was referring to the testimony that Simonton told the family he had been previously arrested for a consensual relationship with a 17-year-old boy, instead of the truth – that he had been convicted of molesting two young boys. (*See id.*) This is a reasonable inference, based on the testimony.

/ / /

*See United States v. Laurins*, 857 F.2d 529, 539 (9th Cir. 1988) (holding that statement that defendant was a liar could be construed as a comment on the evidence).

Simonton similarly complains that the prosecutor improperly drew conclusions about what David might have been thinking during the wrestling incidents had he known of Simonton's past history. (Pet. at 12.) David testified that he did not like it when Simonton grabbed his buttocks but did not want to make a big deal about it. (Resp't Lodgment No. 2 at 232-33.) The prosecutor argued that if David had know of Simonton past history of molestation, David would likely have been more alarmed. (*Id.* at 661-62.) This statement is a reasonable inference based on David's testimony.  *See Molina*, 934 F.2d at 1445.

Furthermore, the district attorney argued that Michael's learning disability could explain inconsistencies in Michael's earlier statements and his trial testimony. (Resp't Lodgment No. 2 at 702-03.) Again, this is a reasonable inference. On the other hand, defense counsel inferred during his closing that Michael's learning disability might lead him to tell stories which were untruthful. (*Id.* at 680-81.) Both sides were permitted to make these arguments. (*See* Resp't Lodgment No. 1 at 98; CALJIC No. 2.20.1.[8]) It was for the jury to ultimately decide whether and to what extent Michael's testimony was credible. (*Id.*) Similarly, the district attorney was

---

[8] CALJIC No. 2.20.1 states:

In evaluating the testimony of a child you should consider all the factors surrounding the child's testimony, including the age of the child and any evidence regarding the child's level of cognitive development. A child, because of age and level of cognitive development, may perform differently than an adult witness, but that does not mean that a child is any more or less believable than an adult. You should not discount or distrust the testimony of a child solely because he or she is a child.

"Cognitive" means the child's ability to perceive, to understand, to remember, and to communicate any matter about which the child has knowledge.

1   permitted to opine as to why Michael initially was untruthful to the school therapist.  *See Ceja*,

2   97 F.3d at 1253-54.

3        The prosecutor was also permitted to counter defense counsel's argument that Simonton's

4   past molestation convictions were "mistakes" (Resp't Lodgment No. 2 at 675) by arguing this

5   minimized the seriousness of the crimes.  (*Id.* at 703-04.)  Further, because there was testimony

6   that, at the family meeting, Michael's father specifically asked Petitioner whether he had ever

7   molested a child before (Resp't Lodgment No. 2 at 146-47), the district attorney was permitted

8   to argue that Petitioner had lied when he responded "no."  (*Id.* at 655-56.)  *See Molina*, 934 F.2d

9   at 1445.

10       Finally, Petitioner complains that his counsel should have objected to the prosecutor's

11   arguments that the testimony of defense witnesses Plimpton and Borges was either biased,

12   incredible, or irrelevant.  (Pet. at 13.)  As discussed above in section IV(B)(2)(d)(1)(ii) of this

13   Report and Recommendation, the prosecutor was permitted make these arguments based on the

14   testimony and evidence presented at trial and the instructions given the jury.  *Ceja*, 97 F.3d  at

15   1253-54; *see also* Resp't Lodgment No. 1 at 96-97, CALJIC No. 2.20.

16       In sum, Simonton has not shown that counsel's failure to object to the above arguments

17   by the prosecutor was objectively unreasonable.  *Strickland*, 466 U.S. at 686-87.  The arguments

18   were permitted under clearly established law, thus any objection would have likely been

19   overruled.  *See Darden*, 477 U.S. at 181-82.  Accordingly, Simonton has also failed to show

20   prejudice.  *Strickland*, 466 U.S. at 694.  The state court's denial of this claim was neither

21   contrary to, nor an unreasonable application of the clearly established law.  *See Williams*, 529 U.S.

22   at 412-13; 28 U.S.C. § 2254. Simonton is not entitled to relief as to this claim.

23                  *(vi)*   *Misconduct During Trial*

24       Simonton argues that his attorney failed to object to several instances of misconduct

25   "during trial." (Pet. at 13.)  Simonton complains that defense counsel should have objected to

26   questioning of Detective Levenberg concerning gifts Simonton had bought for the boys.  (*Id.*)

27   Specifically, the district attorney sought to show that Simonton had a pattern, as do other

28   pedophiles, of "grooming" his victims by buying them gifts, and gaining their trust.   At the end

-38-                                                07cv0431

of Levenberg's testimony the following exchange occurred between the district attorney and Levenberg:

> [Prosecutor]: Have you ever bought a $1,000 drum set for your nieces or nephews?
>
> [Levenberg]: No.
>
> Q: Have you ever bought a multi-thousand dollar vehicle for your nieces and nephews?
>
> A: No.
>
> Q: Have you ever bought cell phones for your nieces and nephews?
>
> A: No.
>
> Q: Let's talk about friends of yours who have kids. [¶] Do you have any friends that have young eight - or nine - or ten-year-old boys?
>
> A: Yes, I do.
>
> Q: Have you ever bought any of your friends' kids a $1,000 drum set?
>
> A: No.
>
> Q: How about an expensive dirt bike?
>
> A: No.
>
> Q: How about cell phones?
>
> A: No.
>
> [Prosecutor]: Nothing further.

(Resp't Lodgment No. 2 at 291.)

Simonton alleges this line of questioning was improper and his counsel was ineffective for failing to object. (Pet. at 13.) Petitioner does not suggest what objection should have been made. However, even if the Court assumes that defense counsel should have objected to the questions as irrelevant, Petitioner has not shown prejudice. The evidence that Simonton had purchased several expensive gifts, including drums and a dirt bike, for the boys was not disputed. More importantly, both victims testified that Simonton had molested them. Petitioner has shown no reasonable probability that had defense counsel objected to this brief line of questioning, the outcome of the trial would have been different. *See Strickland*, 466 U.S. at 694.

Petitioner also claims the defense should have objected to Jonathan's testimony that he saw Simonton in Christopher's bed, possibly touching Christopher under a blanket while he slept. (Resp't Lodgment No. 2 at 299-300.) The defense did object to Jonathan's testimony during pre-trial motions. (*See* Lodgment No. 2 at 66, 68.) The court ruled that the testimony could be admitted in under California Evidence Code section 1108. (*Id.* at 69-75.) Thus, defense counsel was not ineffective. Similarly, Simonton has not shown ineffective assistance of counsel with regard to the admission of Levenberg's testimony regarding "grooming" because defense counsel *did* object to the testimony. (*See* Resp't Lodgment No. 2 at 275-76.)

Simonton also complains that defense counsel failed to object to the elicitation of inadmissible hearsay. During Petitioner's cross-examination, the prosecutor asked Simonton about the conditions of his previous probation:

[Prosecutor]: You were required to attend counseling?

[Simonton]:   Correct.

Q:            And that was with Larry Corrigan, as you testified on direct?

A:            Correct.

Q:            Did you successfully complete the program?

A:            No.

Q:            In fact, Mr. Corrigan had to write the court a letter, indicating you had problems with your counseling with him; correct?

A:            Correct.

Q:            And he considered that you were not complying with his counseling program?

A:            At the time he wrote the letter, yes.

(Resp't Lodgment No. 2 at 499.)

To the extent Simonton alleges the testimony was inadmissible under state law, he fails to state a claim. Even assuming that defense counsel should have objected, Simonton has not shown prejudice. Petitioner had already admitted that he was unsuccessful at completing probation. (*See id.*) The admission of testimony that his counselor wrote a letter reporting this to the court is so insignificant that Simonton has not shown a reasonable probability that, without

-40-

1   that testimony, the result of his trial would have been different.  *See Strickland*, 466 U.S. at 694.

2       Finally, Simonton's claims that the prosecutor repeatedly asked him to comment on the

3   truthfulness of his accusers.  (Pet. at 13.)  Because defense counsel *did* object to these questions

4   (*see* Resp't Lodgment No. 2 at 484-85, 489, 507, 510), Simonton has failed to show how his

5   counsel's performance was deficient.  *See Strickland*, 466 U.S. at 686-87.

6   ///

7       In sum, Simonton has failed to show counsel was ineffective with regard to several of his

8   claims because counsel actually *did* object to the prosecutor's conduct.  To the extent defense

9   counsel did not object, even assuming it was unreasonable, Simonton has not shown prejudice.

10  *See Strickland*, 466 U.S. at 694.  Accordingly, the state court's denial of Simonton's claims was

11  neither contrary to, nor an unreasonable application of clearly established law.  *See Williams*,

12  529 U.S. at 412-13; 28 U.S.C. § 2254. Simonton is not entitled to relief as to this claim.

13                  *(vii)*   <u>*Cumulative Effect*</u>

14      Simonton argues that the cumulative impact defense counsel's failure to object to the

15  numerous instances of prosecutorial misconduct amounted to a violation of his Sixth

16  Amendment rights. (Pet. at 13.)  As discussed above, the vast majority of Simonton's claims of

17  misconduct are without merit.  To the extent there was misconduct, Simonton's counsel objected

18  several times.   In the few cases where counsel failed to object to an improper question or

19  statement, Simonton has not shown prejudice.  *See Strickland*, 466 U.S. at 694.  Because the

20  instances where so short and insignificant, and the evidence against Simonton was strong, there

21  is no reasonable probability that the result of the trial would have been different.  *Id.*

22  Accordingly, the state court's denial of was neither contrary to, nor an unreasonable application

23  of clearly established law. *See Williams*, 529 U.S. at 412-13; 28 U.S.C. § 2254. Simonton is not

24  entitled to relief.

25          **(2)      Failure to Object to CALJIC No. 4.71**

26      Simonton claims that his Sixth Amendment rights were violated when defense counsel

27  failed to object to CALJIC No. 4.71. (Pet. at 14.)  This Court looks to the last reasoned decision

28  to address this claim – the court of appeal's denial of Simonton's state habeas petition. *See Ylst*,

1   501 U.S. at 801-06.  In denying the claim, the court stated:

2          Simonton finally asserts his trial counsel was ineffective by not objecting
3   to CALJIC No. 4.71, and appellate counsel was ineffective for not seeking
    reversal based on the giving of CALJIC No. 4.71, and there was a reasonable
    probability he would have receive a more favorable result at trial or on appeal had
4   that issue been raised.  CALJIC No. 4.71 provides: "When, as in this case, it is
    alleged that the crime charged was committed "on or about" a certain date, if you
5   find that the crime was committed, it is not necessary that the proof show that it
    was committed on that precise date; it is sufficient if the proof shows that crime
6   was committed on or about that date."  Simonton does not dispute this is an
    accurate statement of law, but instead (citing *People v. Barney* (1983) 143
7   Cal.App.3d 490, 497) argues it should not have been given where, as here, the
    prosecution's evidence at trial fixed the time of the crimes alleged in counts one
8   through four to a certain date (May 4, 2000) and the defendant presents a defense
    of alibi or "lack of opportunity" to commit the offense on that date.  However, the
9   objected-to instruction was immediately followed by the court's instructions that
    counts six and seven (charging two counts for touching Michael's buttocks), and
10  counts eight and nine (charging two counts for touching David's buttocks) were
    alleged to have occurred "on or about and between" an approximately one-year
11  period. [Footnote omitted.] There is no claim in this proceeding that CALJIC 4.71
    was improper as to those offenses or any showing the jury did not comprehend
12  CALJIC No. 4.71 to be limited to those offenses.  Moreover, even if the jury
    might have understood the complained-of instruction to *also* apply to counts one
13  through four, it appears the instruction would be proper because the evidence did
    not fix whether the precise touching during Simonton's encounter with Michael
14  would have been *after* midnight (thereby making all four offenses occur on May
    5th), or whether some of the touchings were earlier in the evening (making the
15  commission of some or all the offenses on May 4th).  Here, there is potential that
    the complained of actions had a rational tactical purpose, [footnote 8: For
16  example, a reasonable competent trial attorney could have perceived it would be
    fruitless to object to an instruction that was (at a minimum) partly proper and
17  applicable, and that it would be tactically inadvisable to further highlight the
    instruction by efforts to tailor it to exclude counts one through four from its
18  operation . . .] and we therefore reject Simonton's ineffective assistance of counsel
    claim.

19

20  (*See* Resp't Lodgment No. 27 at 24-26.)

21          The state court's decision was not contrary to, or an unreasonable application of,

22  *Strickland*, 466 U.S. at 689, 694.   The court noted that the instruction was proper under state

23  law, given that it was uncertain whether the conduct took place before midnight on May 4, 2000

24  or after, on May 5, 2000.  Defense counsel would have had no reason to object.  Thus, as the

25  state court noted, Simonton has not shown counsel's performance was unreasonable.

26  Furthermore, even assuming the instruction was improper as to counts one through four, the state

27  court's decision that there was a tactical reason for counsel to decline to object is reasonable.

28  *Id.*   An objection would have only highlighted the instances.  Accordingly, the state court's

1  denial of Simonton's claims was neither contrary to, nor an unreasonable application of clearly

2  established law. *See Williams*, 529 U.S. at 412-13; 28 U.S.C. § 2254. Simonton is not entitled

3  to relief as to this claim.

### (3)      *Failure to Object to Multiplicity of Counts*

5      Petitioner argues that counsel was ineffective for failing to assert that counts six and

6  seven; and counts eight and nine, were multiplicitous. Simonton appears to claim that there was

7  insufficient evidence to support *two* counts as to each boy. (Pet at 14-15.) This Court looks to

8  the last reasoned decision to address this claim – the court of appeal's denial of Simonton's state

9  habeas petition. *See Ylst*, 501 U.S. at 801-06. The court addressed this claim briefly, with regard

10  to appellate counsel,  in a footnote, stating:

> Simonton also asserted below that his appellate counsel was ineffective for
> not asserting that counts six and seven (alleging improper touching of Michael's
> buttocks) and eight and nine (improper touching of David's buttocks) were
> improperly multiplicitous. However, this argument ignored the evidence showed
> at least two improper touchings as to each child, and appellate counsel was not
> required to make a doomed argument that the evidence was not sufficient to
> support two counts as to each child.

15  (Resp't Lodgment No. 27 at 25 n. 7.)

16      As discussed in Section IV(B)(2)(b) of this Report and Recommendation, there was

17  sufficient evidence presented at trial to show that Simonton had twice violated California Penal

18  Code section 647.6(a) with regard to David. David testified that Petitioner grabbed his buttocks

19  on at least two occasions while wrestling. (Resp't Lodgment No. 2 at 231-32.) The first time

20  it happened, David told Petitioner "that's not cool" (*Id.* at 232.) When Simonton did it again,

21  David pushed him off and told him "[d]on't, I don't like that." (*Id.* at 233.)  Simonton also

22  admitted that he previously had molested other young men. Thus, a reasonable juror viewing

23  the evidence in the light most favorable to the verdict could find Simonton guilty of both counts

24  eight and nine beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *see also* Cal. Penal

25  Code § 647.6. Because there was sufficient evidence presented to prove both counts, it was not

26  unreasonable for defense counsel to decline to object. *See Strickland* 466 U.S. 686-87.

27      Likewise, there was sufficient evidence to show that Simonton was guilty of counts six

28  and seven. Under those counts, Petitioner was charged with violating California Penal Code

Section 288(a)[9] by touching Michael's buttocks on two separate occasions between May 31, 1999 and May 3, 2000. (Resp't Lodgment No. 1 at 3.) Michael testified that Simonton touched his butt under his clothes approximately four times. (Resp't Lodgment No. 171-72.) This testimony alone is sufficient to support Simonton's conviction of counts eight and nine. *See Jackson*, 443 U.S. at 319; *see also* Cal. Penal Code § 288(a). Again, defense counsel was not ineffective because he had no reason to object. There was sufficient evidence to support the charges and convictions. *See Strickland*, 466 U.S. 686-87.

Therefore, the state court's denial of this claim was neither contrary to, nor an unreasonable application of clearly established law. *See Williams*, 529 U.S. at 412-13; 28 U.S.C. § 2254. Simonton is not entitled to relief.

### (4)    Withdraw of Alibi Instruction

Petitioner claims he received ineffective assistance of counsel when his defense attorney voluntarily withdrew an instruction (CALJIC No. 4.50[10]) related to alibis. (Pet. at 15.) Again, the last reasoned decision to discuss this claim is the state appellate court's order denying habeas relief. In denying this claim, the court stated:

> Simonton concedes the record affirmatively demonstrates defense counsel withdrew the alibi instruction for an undisclosed strategic reason. There are articulable tactical reasons for this decision that are within the range of reasonable competence. For example, the alibi instruction states the defendant "has introduced evidence showing he was not present at the time and place of the

---

[9]   California Penal Code section 288(a) states:

Any person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years.

[10]   CALJIC No. 4.50 states:

The defendant in this case has introduced evidence for the purpose of showing that he was not present at the time and place of the commission of the alleged crime for which he is here on trial. If, after a consideration of all the evidence, you have a reasonable doubt that the defendant was present at the time the crime was committed, you must find him not guilty.

(*See* Resp't Lodgment No. 1 at 75.)

-44-

commission of the alleged crime." That instruction, inferentially conceding the crime occurred but the defendant was not the perpetrator, is predicated on defense evidence the defendant was elsewhere at the time of the offense. That instruction would have highlighted the *absence* of defense evidence establishing Simonton did *not* spend the night of May 4, 2000, sleeping in his own bed. We conclude Simonton's trial counsel was not ineffective in withdrawing the alibi instruction and, a fortiori, that his appellate counsel was not ineffective for failing to raise that claim on appeal.

(Resp't Lodgment No. 27 at 22-23) (emphasis in original).

Defense counsel specifically withdrew CALJIC No. 4.50 on the record after an off-the-record conference between the attorneys and the court. Counsel stated, "for strategic reasons, I would rather not have [instruction CALJIC No. 4.50]." (Resp't Lodgment No. 2 at 610.) As noted above, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." *Strickland*, 466 U.S. at 690. The state court identified a reasonable tactical reason for withdrawing CALJIC No. 4.50. The instruction assumes the crime was committed. Furthermore, although Simonton presented a witness who testified the Michael was not at the house on May 4, 2000, his credibility was questionable and therefore Simonton's "alibi" was weak. To reiterate, the Supreme Court has stated:

No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions.

*Strickland*, 466 U.S. at 688-89.

Although Simonton's counsel withdrew the instruction he did argue vigorously during closing argument that Michael's testimony was highly questionable because defense witnesses testified that Michael was not present at the house the night of the alleged crime. (*See* Resp't Lodgment No. 690-92.) Accordingly, Petitioner has failed to establish counsel's performance was unreasonable. *Id*. at 687, 697 (courts need not address both components of a *Strickland* claim if a defendant fails to make a sufficient showing as to one). The state court's decision that counsel's performance was not deficient was not an unreasonable application of *Strickland. See Williams*, 529 U.S. at 412-13; 28 U.S.C. § 2254. Simonton is not entitled to relief.

*(5)*        **Failure to Present Defense Theories**

Petitioner contends counsel was ineffective in failing to present certain defense theories. He also claims that defense counsel should have presented certain witnesses to rebut the prosecution's case and strengthen his. (*See* Pet. at 15-16.)  The last reasoned decision to discuss this claim is the state appellate court's order denying habeas relief. *See Ylst*, 501 U.S. at 801-06. The court stated:

> Simonton also claims trial counsel was incompetent because he did not present witnesses to bolster his defense or weaken the prosecution's case. However, Simonton's habeas petition concedes his counsel articulated tactical reasons for not calling Simonton's therapist and a third party witness.  More importantly, because Simonton's habeas petition is devoid of declaration [sic] by these uncalled witnesses of what evidence they would have provided that they been called at trial, Simonton has not satisfied his burden (*People v. Snyder* (2003) 112 Ca..App.4th 1200) of showing there is reasonable probability that the result would have been more favorable to Simonton had these witnesses testified.

(Resp't Lodgment No. 27 at 24.)

Simonton claims that defense counsel should have called Dr. Larry Spice, his therapist while he was on parole, to rebut the "propensity evidence" presented by the prosecution.  He claims Spice would have "detail[ed] the steps taken and the hard work [Simonton] put into therapy to insure against ever repeating [similar offenses]."  (Pet. at 15.)  However, Petitioner admits that defense counsel made the decision not to call Spicer because it would have opened the door for the prosecution to call another one of Simonton's former counselors who would have testified that Simonton failed to participate fully in therapy.  (Resp't Lodgment No. 2 at 499.)  As the state court found, this is a reasonable tactical decision.  *See Strickland,* 466 U.S. at 688-89.  Petitioner also fails to present any evidence, other than his own speculation, that Dr. Spice would have testified as he claims and therefore has not shown that had he been called, the result would have been different." *Strickland*, 466 U.S. at 694.  He has failed to show prejudice. *Id.*

Simonton further claims that his attorney should have presented evidence that the family had motive to falsely accuse him of molesting Michael and David.  (Pet. at 16.)  He contends counsel should have called Michael's sister Jennifer in order to show that Michael had lied about his brother Jay molesting her.  (*Id.*)  However, counsel did question the family members about inconsistencies between their testimony at trial and statements previously made to counselors

-46-

and police officers.  He questioned Michael about his statements regarding Jay and Jennifer and Michael admitted that he had been untruthful about the alleged incident when he spoke to a counselor. (Resp't Lodgment No. 2 at 215-18.)  It was unnecessary to call Jennifer because it would have been cumulative. *See Strickland,* 466 U.S. at 688-89.  Furthermore, Petitioner again only offers his own speculation that Jennifer's testimony would have been helpful to his defense. Accordingly, he has failed to show prejudice. *Id.* at 694.

The state court's denial of this claim was neither contrary to, nor an unreasonable application of clearly established law. *See Williams*, 529 U.S. at 412-13; 28 U.S.C. § 2254.  The claim is therefore denied.

### (6)    *Ineffective Assistance of Appellate Counsel*

Finally, Simonton claims appellate counsel was ineffective in failing to raise several issues on appeal.  Specifically, he asserts that his appellate attorney should have raised the following claims: the trial court erred when it instructed the jury under CALJIC No. 4.71; counts six and seven, and counts eight and nine were "multiplicitous;" and trial counsel was ineffective in failing to object to prosecutorial misconduct and withdrawing CALJIC No. 4.50. (Pet. at 16.)

Like ineffective assistance of trial counsel, the standard for claims of ineffective assistance of appellate counsel is found in *Strickland*. *Morrison v. Estelle*, 981 F.2d 425, 427 (9th Cir. 1992); *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989).  When challenging the assistance of appellate counsel, the petitioner "must show that counsel's advice fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's unprofessional errors, [the petitioner] would have prevailed on appeal." *Miller*, 882 F.2d at 1424.  The Ninth Circuit has held that "appellate counsel's failure to raise issues on direct appeal does not constitute ineffective assistance when appeal would not have provided grounds for reversal." *Wildman v. Johnson*, 261 F.3d 832, 840 (9th Cir. 2001).

As discussed above, none of Petitioner's claims were meritorious. (*See supra* Report and Recommendation section IV(B)(2)(d)(2) (discussing CALJIC No. 4.71); *see supra* Report and Recommendation Section IV(B)(2)(d)(3) (discussing "multiplicitous counts"); *see supra* Report

and Recommendation Section IV(B)(2)(d)(1)(i)-(vii) (discussing prosecutorial misconduct). Accordingly, Simonton has not shown that appellate counsel's decision not to raise these claims on appeal was unreasonable, nor that had the issues been raise, he would have prevailed on appeal. *See id.*; *see also Miller*, 882 at 1424. Therefore, Simonton is not entitled to habeas relief as to this claim. *See Williams*, 529 U.S. at 412-13; 28 U.S.C. § 2254.

## V.   CONCLUSION AND RECOMMENDATION

In sum, the Court concludes that Grounds One, Five, Seven and Eight are procedurally barred from federal habeas review and are therefore **DISMISSED** and with prejudice. Grounds Two, Three, Four and Six are **DENIED** with prejudice on the merits.

The Court submits this Report and Recommendation to United States District Judge Napoleon A. Jones, Jr. under 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California. For the reasons outlined above, **IT IS HEREBY RECOMMENDED** that the Court issue an Order:  (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered denying the Petition..

**IT IS ORDERED** that no later than **March 3, 2008,** any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **March 24, 2008**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

DATED:  February 1, 2008

_____
Hon. Leo S. Papas

07cv0431

1

U.S. Magistrate Judge

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28